1   MICHELLE CAIOLA (*Pro Hac Vice* Admission Pending)
    (mcaiola@dralegal.org)
2   DISABILITY RIGHTS ADVOCATES
    675 Third Avenue, Suite 2216
3   New York, New York 10017
    Telephone:     (212) 644-8644
4   Facsimile:     (212) 644-8636

5   REBECCA WILLIFORD (CA BAR NO. 269977)
    (rwilliford@dralegal.org)
6   SEAN BETOULIERE (CA BAR NO. 308645)
    (sbetouliere@dralegal.org)
7   DISABILITY RIGHTS ADVOCATES
    2001 Center Street, Fourth Floor
8   Berkeley, California 94704-1204
    Telephone:     (510) 665-8644
9   Facsimile:     (510) 665-8511

10  JINNY KIM (CA BAR NO. 208953)
    (jkim@legalaidatwork.org)
11  RACHAEL LANGSTON (CA BAR NO. 257950)
    (rlangston@legalaidatwork.org)
12  LEGAL AID AT WORK
    180 Montgomery Street, Suite 600
13  San Francisco, California 94104
    Telephone:     (415) 864-8848
14  Facsimile:     (415) 593-0096

15  Attorneys for Plaintiffs

16              **UNITED STATES DISTRICT COURT**

17              **NORTHERN DISTRICT OF CALIFORNIA**

18  SENIOR AND DISABILITY ACTION, on          **CLASS ACTION**
    behalf of its members and all others similarly
19  situated; INDEPENDENT LIVING               **COMPLAINT FOR INJUNCTIVE AND**
    RESOURCE CENTER OF SAN                      **DECLARATORY RELIEF FOR**
20  FRANCISCO; PI RA, on behalf of himself     **VIOLATIONS OF THE AMERICANS**
    and all others similarly situated; and IAN  **WITH DISABILITIES ACT; SECTION**
21  SMITH, on behalf of himself and all others  **504 OF THE REHABILITATION ACT OF**
    similarly situated,                         **1973; CALIFORNIA CIVIL CODE § 51,**
22                                              ***ET SEQ*; AND CALIFORNIA**
            Plaintiffs,                         **GOVERNMENT CODE § 11135.**
23
    v.
24
    SAN FRANCISCO BAY AREA RAPID
25  TRANSIT DISTRICT and GRACE
    CRUNICAN, in her official capacity as
26  General Manager of the San Francisco Bay
    Area Rapid Transit District,
27
            Defendants.
28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**INTRODUCTION**

1.     This class action seeks to end the systemic civil rights violations committed by the San Francisco Bay Area Rapid Transit District ("BART") against people with mobility disabilities who use wheelchairs, walkers, and other mobility aids, and who rely on elevators or escalators in order to access BART's stations and services. For decades, people with disabilities have been denied full and equal access to BART's stations and services that federal and state disability rights laws seek to guarantee. Instead, they regularly encounter broken or soiled elevators, non-functioning escalators, broken accessible fare gates, and other barriers that bar them from access to the BART system, and that provide them with a level of service vastly inferior to that which BART's non-disabled customers enjoy.

2.     BART's outreach materials note that it is the "backbone" of the Bay Area transportation system, serving an average of 440,000 riders each weekday, and connecting visitors to and residents of the Bay Area to employment, education, leisure, shopping, dining, government services, and every other aspect of community life.

3.      The transportation services that BART provides are especially crucial for people with mobility disabilities, many of whom are particularly reliant on public transportation because they do not drive due to disability.

4.     However, people with mobility disabilities are consistently denied equal access to this crucial component of the Bay Area's mass transit system. For example, even though BART publicizes that all of its stations have accessible elevators, these elevators are regularly out of service. In fact, the agency's data shows that more than 2,500 elevator outages have occurred during BART's normal operating hours since October 2015.

5.     The vast majority of these outages have nothing to do with regularly-scheduled maintenance; rather, they are the unplanned but predictable result of BART's consistent failure to adequately maintain the accessible features of its stations. Moreover, BART does not provide effective, reliable, or well-publicized alternate accessible transportation options for passengers with mobility disabilities who are unable to enter or leave their chosen BART stations because of outages.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704–1204
(510) 665-8644

6.      Even when BART's elevators are in working order, they are often rendered effectively unusable by the presence of feces and/or urine that BART staff fails to prevent or to promptly clean. While BART's non-disabled passengers may be able to avoid these unsanitary and hazardous conditions by taking a station's stairs or escalators instead, riders with mobility disabilities that necessitate the use of an elevator do not have that option—they must either travel to another station in the hope of finding a usable elevator, or roll through human waste in order to reach their final destination. This is an especially repugnant prospect for users of manual wheelchairs, whose hands, arms, and clothes inevitably come into contact with the wheels of their wheelchairs.

7.      BART's access barriers are not limited to station elevators. BART's escalators and accessible fare gates are also often out of service, as are the call boxes used to alert station agents to access problems.

8.      Moreover, BART's policies and practices create access barriers even in instances where station equipment is fully functional. For example, station agents regularly turn elevators off to prevent fare evasion, and consistently fail to respond to requests for assistance or information regarding access barriers and alternative routes.

9.      Finally, Plaintiffs are not aware of an adequate emergency evacuation plan that is communicated to riders with mobility disabilities. In fact, BART's website instructs untrained passengers to help people with disabilities in the event of an emergency, and informs wheelchair users to "leave [their] wheelchairs on the train," as "the walkways and ramps used for evacuation are too narrow to accommodate wheelchairs." BART provides no instructions for how wheelchair users are supposed to evacuate without their wheelchairs. The absence of an adequate plan to assist passengers with disabilities in evacuating from stations and trains is especially concerning given the frequent breakdown of elevators and other mechanical equipment upon which riders with mobility disabilities rely.

10.      BART has been on notice of the violations detailed herein for more than twenty years. In August 1996, Disability Rights Advocates and Disability Rights California filed a similar class action lawsuit against BART—*Cupolo v. Bay Area Rapid Transit*—alleging

disability discrimination in violation of federal and state law. The Northern District granted Plaintiffs' motion for preliminary injunction in September 1997, finding that people with mobility disabilities were being denied basic access to the BART system, and ordering BART to adequately maintain and promptly repair its elevators. *Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078 (N.D. Cal. 1997).

11.     In 1998, the *Cupolo* plaintiffs entered into a settlement agreement with BART in which the agency agreed to, among other things: (1) rehabilitate or completely replace station elevators and escalators, as needed; (2) engage in regular preventative maintenance and prompt repair of elevators; (3) ensure reliable and accurate distribution of information regarding out-of-service elevators and escalators; and (4) implement an intensive system of elevator inspection and cleaning, by which elevators were regularly inspected (as often as once per hour) and immediately cleaned upon discovery of human waste or other fouled conditions. Regardless of the results of these inspections, all elevators were to be thoroughly cleaned at least twice per day, and janitorial staff was to clean fouled elevators within 30 minutes of being informed of a problem.

12.     Although conditions temporarily improved following this settlement, BART has since allowed the condition of its elevators and other accessibility features, as well as its policies and practices regarding access for people with mobility disabilities, to return to their pre-*Cupolo* conditions.

13.     BART's failure to maintain its elevators in operable and sanitary condition, combined with the other access barriers and discriminatory policies or practices set forth herein, constitute violations of both federal and state law.

14.     Plaintiffs notified Defendants of these barriers and attempted to resolve this matter without a lawsuit. However, Defendants failed to commit to a plan to resolve these barriers within a reasonable timeframe.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

15.     This is an action for declaratory and injunctive relief, brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"); Section 504 of the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* ("Section 504"); the Unruh Civil Rights Act Cal. Civ. Code § 51, *et seq.* ("Unruh Act"); and Cal. Gov't Code § 11135.

16.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a) for claims arising under the ADA and Section 504.

17.     This Court has supplemental jurisdiction over Plaintiffs' claims arising under California state law, pursuant to 28 U.S.C. § 1367(a).

18.     This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

19.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)-(c), as this is the district in which Defendants reside and in which the events and omissions giving rise to Plaintiffs' claims occurred.

20.     Pursuant to the Northern District of California's Civil L.R. 3-2(c)-(d), since the events and omissions giving rise to Plaintiffs' claims occurred in San Francisco, Alameda, and Contra Costa counties, the intradistrict assignment should be to either the Northern District's San Francisco Division or its Oakland Division.

## PARTIES

21.     Plaintiff Senior and Disability Action ("SDA") is a non-profit membership organization located in San Francisco that works with and on behalf of seniors and people with disabilities, many of whom use wheelchairs, walkers, and other mobility aids, and rely on elevators or escalators in order to access BART's stations and services. Through education, advocacy, and collective action, SDA works to reduce the isolation, inequality, and stigma that its members and constituents face, and to create a city and world in which seniors and people with disabilities can live well and safely. Transit access—including access to BART—is a core component of this work, as the majority of SDA's members and constituents are low-income, and hence particularly reliant on the public transit services that Defendant BART provides. SDA sues on behalf of itself and its members and staff with mobility disabilities who are affected by Defendants' pervasive barriers to access and discriminatory policies and practices. Further, this

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   suit does not require the individual participation of SDA's members, as Plaintiffs seek only

2   declaratory and injunctive relief.

3       22.     Plaintiff Independent Living Resource Center of San Francisco ("Independent

4   Living Center") is a disability rights advocacy and support organization. Its mission is to ensure

5   that people with disabilities are full social and economic partners within their families and within

6   a fully accessible community. BART's access barriers and discriminatory policies and practices

7   regularly impose economic harms on the Independent Living Center, frustrate the organization's

8   efforts to engage in its core advocacy work, and force it to divert resources that it needs to spend

9   on other work. Plaintiff Independent Living Center sues on behalf of itself and in furtherance of

10  its mission of ensuring that people with disabilities are fully integrated into the social and

11  economic fabric of their communities.

12      23.     Plaintiff Pi Ra is a resident of Concord who has complications from diabetes that

13  make it difficult for him to stand for long periods of time or walk long distances. As such, he

14  uses mobility devices, including crutches; custom orthopedic shoes; a bicycle to get from place

15  to place; and at times, a knee scooter (a device that allows him to take weight off his feet).

16  Plaintiff Ra is a "qualified person with a disability" and an "individual with a disability" within

17  the meaning of all applicable statutes and regulations, including 42 U.S.C. § 12131(2), 28 C.F.R.

18  § 35.104, 29 U.S.C. § 705(20)(B), and Cal. Gov't Code § 12926(m).

19      24.     Plaintiff Ian Smith is a resident of Oakland who uses a motorized wheelchair to

20  get from place to place. Plaintiff Smith is a "qualified person with a disability" and an

21  "individual with a disability" within the meaning of all applicable statutes and regulations,

22  including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), and Cal. Gov't

23  Code § 12926(m).

24      25.     Hereafter, references to Plaintiffs shall be deemed to include the above-named

25  Plaintiffs and each member of the class, unless otherwise indicated.

26      26.     Defendant San Francisco Bay Area Rapid Transit District—a special purpose

27  district—is a public entity within the meaning of Title II of the ADA and has received federal

28  financial assistance within the meaning of Section 504, and state financial assistance within the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

meaning of Government Code § 11135. Defendant BART operates a fixed route system of designated public transportation within the meaning of 42 U.S.C. § 12143(3) and 49 C.F.R. § 37.3.

27.     Defendant Grace Crunican has been the General Manager of the San Francisco Bay Area Rapid Transit District since August 2011. As such, she is responsible for ensuring that BART does not discriminate against passengers with mobility disabilities and that the agency's facilities, policies, and practices are in full compliance with federal and state law. Defendant Crunican is sued in her official capacity.

28.     Defendant BART and Defendant Crunican will be jointly referred to as "Defendants." References in this document to "Defendants" shall be deemed to include all named Defendants, unless otherwise indicated.

29.     Plaintiffs are informed and believe, and on this basis allege, that each Defendant was the agent of every other Defendant and was at all times relevant to this Complaint acting within the scope of such agency.

## FACTS APPLICABLE TO ALL CLAIMS

30.     Defendant BART has failed to make its fixed route transit system readily accessible to and usable by persons with mobility disabilities, by, among other things:

i)     Repeatedly failing to maintain the accessible features of BART stations—including elevators, escalators, call boxes, and accessible fare gates—in operative condition;

ii)    Failing to promptly repair accessible features that are damaged or out of order;

iii)   Failing to take reasonable steps to accommodate individuals with disabilities who would otherwise use the accessible features of BART stations, when those features are out of order;

iv)    Failing to provide accurate information regarding whether elevators are in service;

v)     Failing to regularly inspect or promptly clean station elevators so as to ensure that they are free of human waste and other noxious material;

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

vi) Adopting a policy or practice of allowing BART station agents to lock or turn off station elevators during normal operating hours, thereby barring access to people with mobility disabilities;

vii) Failing to provide adequate accessible route signage, including signage indicating the location of elevators or the route by which people may enter the "paid" area of a station after using them; and

viii) Failing to develop, implement, or test an adequate plan for the safe evacuation of passengers with mobility disabilities during an emergency, despite having such a plan for the evacuation of its non-disabled passengers.

31.     BART's publicly disseminated elevator outage data shows that more than 2,500 elevator outages have occurred during BART's normal operating hours since October 2015. These elevator outages occur across the BART system—in designated "key stations" as well as other stations.

32.     Many stations—including those at Civic Center, Powell, and Montgomery Street, which are among BART's busiest—have experienced well over 100 such outages in the past year.

33.     The vast majority of these outages are unplanned. The outages are often very long: most last for well over an hour, and outages lasting longer than 6 hours are common.

34.     Since people with mobility disabilities may need to rely on as many as four BART elevators in order to complete a single one-way trip—two elevators between the street and a station's concourse ("street elevator"), and two more between the concourse and the train platform ("platform elevator")—even a single elevator outage can make a given station-to-station trip impossible, and multiple outages can combine in a way that makes these trips impossible much of the time: either because a street or platform elevator is not working or unusable at a rider's departure station, at their destination station, or in both locations.

35.     Even where elevator outages are planned, BART personnel often schedule them in a way that disproportionately impacts people with disabilities. For instance, BART has scheduled elevator maintenance or repair at adjacent stations at the same time, meaning that

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  people with mobility disabilities may need to travel two or more stations out of their way in

2  order to find a BART station they can access via elevator.

3      36.     BART does not consistently provide accurate notice of elevator outages—whether

4  planned or unplanned. People with mobility disabilities regularly arrive at BART stations to find

5  elevators out of service, even when no notice of these outages has been provided through in-

6  station announcements, in-train announcements, website updates, text message alerts, or any

7  other means. Moreover, even when BART does give timely notice via SMS or email, there is no

8  way for users to filter out alerts regarding stations that they do not use, meaning that it is easy to

9  miss pertinent information among the sheer volume of outage messages that BART sends out.

10     37.     Conversely, people with mobility disabilities occasionally find elevators that are

11 in working order, even where signs, text message alerts, and other means of notification still list

12 them as being out of service.

13     38.     BART representatives and other personnel have sometimes stated that they can

14 arrange for paratransit when wheelchair users are impacted by elevator outages. However, the

15 availability of paratransit services in such circumstances is poorly-publicized—even BART's

16 station agents are often unaware of this option—and BART cannot provide wheelchair users

17 with a reliable estimate of how long it will take for paratransit services to arrive. Consequently,

18 paratransit services are rarely an effective option for people with mobility disabilities who are

19 attempting to plan their commute around an inaccessible BART station.

20     39.     Even when elevators at BART stations are technically in working order, they are

21 not necessarily usable. Passengers with mobility disabilities often cannot access station elevators

22 as a result of BART's policies and practices and the actions and/or inactions of BART staff.

23     40.     For example, BART staff does not regularly inspect station elevators for

24 cleanliness to ensure that the elevators remain free of human waste. In addition, BART staff

25 often fail to promptly address elevator cleanliness even after being alerted to the problem. As a

26 result, people with mobility disabilities routinely find urine and feces on elevator floors, walls,

27 buttons, and other surfaces, and such matter often remains in place even hours or days after

28 BART staff has been alerted.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

41.     When a BART elevator is soiled, passengers with mobility disabilities are left with an unpleasant set of choices: either (1) wait an unknown amount of time until BART cleans the elevator; (2) turn around and travel to another station, in the hope that the elevators there will be functioning and cleaner; or (3) use the elevator regardless of whatever human waste is in the elevator, often forcing them to roll the wheels of their mobility device—which they must continue to rely on throughout the day—through puddles of urine or other waste. The first and second of these options are often time-consuming to the point of complete impracticality. However, the third option requires disabled customers to endure a degrading, dehumanizing, and hazardous experience that BART's non-disabled passengers do not have to face.

42.     Similarly, BART's elevators are also often rendered inaccessible because they have been turned off by BART personnel. In many BART stations, the elevators are situated outside of the fare gates, meaning that people will sometimes use elevators to avoid paying their BART fare. In order to prevent this practice, BART staff will frequently turn off working elevators, forcing people with mobility disabilities to find or otherwise contact a station agent to turn the elevator back on.

43.     In addition to inaccessible elevators, BART passengers with mobility disabilities routinely encounter broken accessible fare gates. While some people with mobility disabilities can use the standard fare gates when this happens, many riders with mobility disabilities find the Clipper card "tagging" area or the slot to insert BART tickets on these gates impossible to reach. Even passengers who are technically able to reach this area may be able to do so only with considerable difficulty and pain. Thus, when they encounter broken accessible fare gates, many passengers with mobility disabilities are forced to exit through the emergency exit gate, sometimes without paying if they cannot reach the  Clipper card "tagging" area or the slot to insert BART tickets, and then spend extra time on their next trip looking for a station agent to correct their Clipper card or BART ticket to make it usable again.

44.     Riders with mobility disabilities also routinely encounter problems with the call boxes outside of each elevator, which can connect passengers to station agents or other BART personnel to request assistance with access barriers within the BART system. This method of

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  communication is especially important when elevators are out of service or turned off and riders

2  have questions about alternative options. However, these boxes themselves are often out of

3  service or in poor working order, making it difficult or impossible to understand and

4  communicate with the responding BART agent. On other occasions, no agent answers the call

5  box, or an agent will answer and immediately hang up, without communicating with the rider.

6       45.    Many people with mobility disabilities are semi-ambulatory—they may not

7  require the use of an elevator to access BART stations, but may still be unable to climb up or

8  walk down stairs. For such passengers, frequent escalator outages also impede access to BART's

9  stations and services.

10       46.    BART does not have an adequate emergency evacuation plan in place for riders

11  with mobility disabilities. BART's website instructs untrained passengers to help people with

12  disabilities in the event of an emergency, and informs wheelchair users to simply "leave [their]

13  wheelchairs on the train," as "the walkways and ramps used for evacuation are too narrow to

14  accommodate wheelchairs."

15       47.    This discrimination and systemic inaccessibility has a severe negative impact on

16  persons with mobility disabilities who use BART, as represented by the experiences of the

17  named Plaintiffs.

18       48.    Plaintiff SDA has suffered and will continue to suffer injuries as a result of

19  BART's inaccessibility, and of their encounters with Defendants' discriminatory policies,

20  practices, and access barriers described herein. SDA's staff, members, and constituents with

21  mobility disabilities are regularly barred from accessing the BART system due to the physical

22  barriers and discriminatory policies or practices detailed within this complaint. Even where

23  technically possible for these individuals to access the BART system—by, for example,

24  rerouting to a station many blocks, or more than one mile, away—such access is often

25  unreasonably and discouragingly difficult. As a result, many of SDA's members and constituents

26  ultimately decide that transit via BART is not worth the trouble, and they choose not to leave

27  their homes at all. Thus, BART's access barriers and discriminatory policies and practices

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    compound the social and economic isolation already faced by many of SDA's members and

2    constituents with mobility disabilities.

3        49.    BART's access barriers and discriminatory policies and practices also have an

4    immense impact on SDA as an organization, as many members of its staff also have mobility

5    disabilities; use wheelchairs, walkers, and other mobility aids; and rely on elevators or escalators

6    in order to access BART's stations and services. This includes SDA's Executive Director,

7    Jessica Lehman, who uses a motorized wheelchair. Ms. Lehman regularly relies on BART to

8    travel from her home in Oakland to SDA's offices near the Civic Center BART station, as well

9    as to travel to work-related meetings and events. However, on numerous occasions, Ms. Lehman

10   has been late to work; off-site meetings with members, coalition partners, or government staff;

11   speaking engagements; and other important work-related events as a direct result of elevator

12   outages and other access barriers in BART stations.

13       50.    In addition, when a non-working elevator leaves Ms. Lehman stranded at the

14   street or platform levels of a station and no station agents are present, she must attempt to page

15   them via BART's station call boxes. These call boxes are often broken or barely audible, making

16   communication impossible. Even when they work, however, Ms. Lehman often has to press the

17   button several times before an agent answers.

18       51.    These pervasive barriers result in economic harm to SDA —either directly,

19   through lost work time and productivity; or indirectly, through the time, effort, and cost involved

20   in planning alternative transportation that is more reliably accessible than BART. They also often

21   have a direct impact on SDA's advocacy efforts. For example, in November 2016, Ms. Lehman

22   was over half an hour late to a public hearing about pedestrian safety—a core issue of concern

23   for SDA—as a result of an unplanned outage at the Civic Center BART station that required her

24   to travel nearly a mile farther than planned.

25       52.    Plaintiff Independent Living Center has suffered injuries as a result of BART's

26   inaccessibility and/or staff members who have used, and will continue to use BART and who

27   have encountered, and will continue to encounter, the various types of access barriers described

28   herein. Many of the Independent Living Center's staff members have mobility disabilities; use

1  wheelchairs, walkers, and other mobility aids; and rely on elevators or escalators in order to

2  access BART's stations and services. These staff members are impacted by elevator outages and

3  other access barriers on an almost-daily basis as they attempt to use BART for work-related

4  travel.

5  53.  This includes Independent Living Center Staff Attorney Jessie Carver, who uses a

6  motorized wheelchair. Ms. Carver also regularly uses BART to travel to work-related meetings

7  and events throughout the Bay Area. However, on numerous occasions Ms. Carver has been late

8  to work, off-site meetings, speaking engagements, and other important work-related events as a

9  direct result of elevator outages and other access barriers in BART stations. Each such instance

10  imposed a direct economic harm on the Independent Living Center, in the form of lost employee

11  work-time and productivity.

12  54.  BART's access barriers and discriminatory policies and practices also regularly

13  stymie the Independent Living Center's efforts to engage in its core advocacy and outreach

14  work. For example, the elevators at BART's Civic Center station were out of service during the

15  Independent Living Center's Disability Unity Festival in September 2015, preventing many

16  people with disabilities from using BART to access this important community event—and

17  preventing many people with disabilities from being able to attend at all.

18  55.  Similarly, on December 2, 2016, unexpected elevator outages prevented

19  Independent Living Center staff members from using BART to travel to a meeting with the

20  Mayor's Office of Disability at City Hall. Instead, they were forced to walk and/or wheel to City

21  Hall and risked being late to an important meeting.

22  56.  Independent Living Center staff members must routinely cancel or reschedule

23  early-morning meetings with clients and constituents because unexpected outages and other

24  BART access barriers make it impossible for meeting attendees to arrive on time. The

25  Independent Living Center must also regularly divert time and resources to find accessible

26  alternatives to BART travel for staff and constituents, and otherwise compensate for the effects

27  of Defendants' discriminatory policies, practices, and access barriers.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

57. Plaintiff Ra uses crutches, custom orthopedic shoes, a bicycle and at times, a knee scooter as a result of his mobility disability. Plaintiff Ra tries to avoid walking as much as possible, because excessive walking on hard surfaces makes him prone to blisters and open wounds that can leave him unable to work for a month or more, and that force him to curtail his activities for two to three months as he heals.

58. Plaintiff Ra regularly relies on BART to travel from his home near the Pleasant Hill BART station to his place of employment near the Civic Center BART station in San Francisco. Plaintiff Ra uses BART's escalators and will use the elevators when they are closer, when the escalators are crowded, or when escalators are out of order.

59. When the accessible features of BART stations are working and usable, the BART system also provides Plaintiff Ra access to social engagements, cultural events and many other aspects of community life. However, frequent elevator and escalator outages, unmarked accessible paths of travel, and the myriad other access issues detailed herein often adversely affect Plaintiff Ra's ability to access BART and travel throughout the Bay Area.

60. Plaintiff Ra encounters elevator and escalator outages several times a week as he attempts to use the BART system to commute to and from work, and to engage in his normal day-to-day activities.

61. Plaintiff Ra avoids the Powell Street Station as much as possible because the escalator does not go down to the platform level. In addition, the elevator at the Powell Street station that is closest to Plaintiff Ra's work that would take him directly from the street level to the concourse level has not been operational for over a year. While Plaintiff Ra could take the escalator down from the street level to the plaza level at that location, he would be required to travel down five or six steps to reach the concourse level, which is difficult for him and puts him at further risk of injury. Furthermore, the journey from one elevator to another elevator would require Plaintiff Ra to walk a long distance on a hard surface and puts him at risk for further injury.

62. Plaintiff Ra avoids the 16th Street Mission station because there is no down escalator from the concourse to the platform and he must utilize the elevators that are frequently

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

soiled and unsanitary. The elevator between the street and concourse level requires Plaintiff Ra to walk some distance to use the fare gate and the walk from the fare gate to the elevator between the concourse and platform levels is a distance of about 150 feet or more. Walking a long distance on a hard surface puts Plaintiff Ra at additional risk of pain and injury.

63.     Plaintiff Ra has signed up for outage alerts on his cell phone. However, he rarely receives notice of escalator outages. At times, he will check the BART website which shows a station's escalators as being in operation, but when he arrives at the station, he will encounter an escalator outage, and he must then make his way to the elevators which requires him to walk an additional distance on the hard surface of the station's floor.

64.     Several times, Plaintiff Ra has informed station agents at the Civic Center station that the elevator is out of service. Because a wheelchair-user who is his co-worker relies on the Civic Center station elevators, Plaintiff Ra has checked the BART website to see if the elevator outage is reported. Often, he has found that it took about 30 to 45 minutes for a reported outage to appear on BART's website.

65.     Earlier this year, the Civic Center escalator down to the concourse level and the escalator up from the concourse level to Seventh Street were both not working for a period of about two and a half months. Because these escalators were out, Plaintiff Ra needed to walk to the elevator in order to get to work.

66.     Once a month, Plaintiff Ra attends a work-related meeting near the Montgomery Street BART station. At the Montgomery Street BART station, he encounters a street elevator that has a small elevator cab. Because of the elevator's small size, it is difficult for him to fit his bicycle and crutches in the elevator and he must wait until there are no passengers in the elevator or waiting to use the elevator before he is able to use the elevator by himself.

67.     In July 2016, Plaintiff Ra and his wife attempted to travel from the platform to the street level at the Powell BART station. When he arrived, he encountered escalator and elevator outages. Plaintiff Ra was forced to hobble up the stairs while his wife carried his knee scooter up the stairs for him.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

68.     In Fall 2016, Plaintiff Ra encountered an escalator outage while attempting to go down to the platform level. Because he knew that walking to the elevator would require him to walk on a hard surface for over a block, Plaintiff Ra was forced to use the stairs while a passerby assisted him with carrying his bike down the stairs.

69.     Plaintiff Smith uses a motorized wheelchair as a result of his mobility disability and relies on station elevators in order to access the BART system. Plaintiff Smith regularly relies on BART to travel from his home near the 12th Street Oakland BART station to his place of employment near the 16th Street Mission BART station in San Francisco. When the accessible features of BART stations are working and usable, the BART system also provides Plaintiff Smith access to social engagements, cultural events, shopping and dining opportunities, medical appointments, and many other aspects of community life. However, frequent elevator outages, soiled elevators, broken accessible fare gates, confusing and unmarked accessible paths of travel, and the myriad other access issues detailed herein often adversely affect Plaintiff Smith's ability to access BART and travel throughout the Bay Area.

70.     Plaintiff Smith regularly encounters elevator outages as he attempts to use the BART system to get to and from work and to engage in his normal day-to-day activities. When outages occur, Plaintiff Smith must make time-consuming and tiring detours from his desired route—often traveling a mile or more out of his way to access the BART system or having to re-route to a station far from his actual destination. Based on Plaintiff Smith's information and belief, the vast majority of these outages are unplanned and unrelated to scheduled maintenance or repair.

71.     At times, Plaintiff Smith has advance notice of these outages by means of BART's elevator outage text alert system, and he is able to plan accordingly. However, it is not uncommon for Plaintiff Smith to arrive at his departure or destination station only to find that one or more elevators are out without advance warning. These instances are especially problematic because Plaintiff Smith cannot plan for them ahead of time, meaning that they will almost invariably make him late to work, medical appointments, social engagements, movies, and more. Plaintiff Smith worries that the unavoidable frequency with which this occurs will

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

have a negative impact on his career. Moreover, outage-related delays already have a substantial impact on his personal life, as Plaintiff Smith must often cancel evening plans to compensate for the extra time and energy required just to get home.

72.     BART's outage alerts and notices sometimes reflect that an elevator is out of service even after it has been fixed and returned to service. When Plaintiff Smith receives this inaccurate information, he must travel blocks or miles out of his way when doing so could have been avoided.

73.     On several occasions, Plaintiff Smith has encountered elevator outages at adjacent BART stations—for example, at both 16th Street and 24th Street Mission stations. When this occurs on a weekday, Plaintiff Smith must travel from his work near the 16th Street Mission station to the Civic Center station—a distance of more than one mile. Moreover, this is a more difficult journey for Plaintiff Smith to make than the mere distance would suggest, as the sidewalks are blocked in several places by tent encampments that his wheelchair cannot pass, forcing him to risk his life by traveling into traffic on the street. There are also a number of large and confusing intersections along this route that are dangerous for pedestrians traveling on foot, and especially for wheelchair users such as Plaintiff Smith, who are less visible to oncoming traffic. For example, the intersection of Van Ness Avenue, Howard Street, and the US 101 freeway on-ramp lies along this path, which requires Plaintiff Smith to cross against traffic several times.

74.     At least two wheelchair-users have been killed in recent years while attempting to cross busy San Francisco intersections. As a result of these risks, Plaintiff Smith has occasionally been forced to pay for an accessible Uber, which are extremely scarce and expensive, or spend the night in his office rather than take his chances traveling to the Civic Center BART station after work.

75.     Plaintiff Smith and the other named Plaintiffs recognize that BART must sometimes take elevators out of service in order to conduct scheduled maintenance and repairs. However, BART often schedules these outages in ways that disproportionately affect people with mobility disabilities who cannot access BART stations without a functional elevator. For

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

example, BART recently scheduled overlapping repair work during normal operating hours at the Powell, Montgomery, and 24th Street Mission stations. When combined with unplanned outages, this meant that Plaintiff Smith and other people with mobility disabilities who needed to use the Powell, Montgomery, or 24th Street Mission stations sometimes had to travel two stops out of their way—to Civic Center or Embarcadero—to find a BART station they could use. This happened to Plaintiff Smith more than once over the duration of these planned outages.

76.     Recently, BART personnel have informed Plaintiff Smith that station agents can arrange for paratransit services when wheelchair users are impacted by elevator outages. However, this option is poorly-publicized—Plaintiff Smith only learned of its existence after four years of regular BART use. Moreover, unlike a dedicated "bus bridge," which could route wheelchair users to, from, or around an inaccessible station on a predictable schedule, BART does not provide wheelchair users with a reliable estimate of how long it might take for paratransit services to arrive. Consequently, Plaintiff Smith has not found paratransit to be an effective alternate transportation option when attempting to plan his commute around an inaccessible BART station.

77.     Even when BART elevators are in order, Plaintiff Smith frequently finds them soiled by urine, feces, or other human waste. At times, Plaintiff Smith will attempt to report the problem, but often there is no station agent or other BART employee available. Thus, since Plaintiff Smith's first priority is to get to his destination on time, he often has to roll into an elevator that is soiled with or smells of urine and/or feces. Since stairways and other areas of BART are kept reliably clear of such matter, able-bodied BART customers are rarely forced to face such unsanitary conditions while using BART. However, Plaintiff Smith and other people with mobility impairments encounter human waste in BART elevators several times a week—so frequently, in fact, that it has become a disgusting but predictable feature of their daily commutes.

78.     Plaintiff Smith has occasionally encountered BART elevators so unclean as to make them completely unusable. On these occasions, Plaintiff Smith has had to travel to another station in order to continue his journey, just as he would if the elevator were out of service.

79.     At the BART elevators that are situated outside of BART fare gates, people sometimes use a station's elevators to get on and off BART trains in order to avoid paying their fares. Like other named Plaintiffs and class members, Plaintiff Smith has repeatedly encountered functional elevators that station agents have turned off in an attempt to prevent such fare evasion. When this occurs, Plaintiff Smith must find or otherwise contact a station agent to turn the elevator back on. Sometimes an agent is immediately available, but often Plaintiff Smith must wait a considerable amount of time for an agent to appear.

80.     Purposely-deactivated elevators invariably delay Plaintiff Smith's journey, often causing him to miss his train. In short, BART's practice of turning off elevators has a disparate impact upon the disabled—effectively penalizing Plaintiff Smith and other people with mobility disabilities who rely on BART's elevators.

81.     In addition to access barriers involving BART elevators and call boxes, Plaintiff Smith regularly encounters broken accessible fare gates. Although Plaintiff Smith is generally able to use the normal fare gates when this happens, doing so requires him to contort his body in order to reach the Clipper card "tagging" area of these gates, which is sometimes not feasible due to chronic pain. When unable to reach the "tagging" area, Plaintiff Smith is forced to exit through the emergency exit gate without paying and then spend time on his next trip looking for a station agent to correct his Clipper card so it is usable again.

82.     Finally, Plaintiff Smith regularly encounters access barriers due to the lengthy and confusing paths of travel that people with mobility disabilities must take in order to access BART stations. Since elevators are often located outside of fare gates, elevator users must engage in convoluted and counterintuitive practices to access the BART system—by, for instance, going through a station's emergency exit gate only to tag their fare card and return to the "pay" side of the station. BART provides no markings or other instructions regarding this process—rather, it is something that riders reliant on BART's elevators must learn through trial, error, and the informal tutelage of others.

83.     Similarly, the actual location of elevators is not well marked in all BART stations, making it difficult for Plaintiff Smith to find an elevator when traveling to a station for the first

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

time. Even in stations that he uses frequently, Plaintiff Smith will occasionally find himself in need of signage, such as when he is trying to get his bearings upon exiting a train. In such instances, Plaintiff Smith has often travelled all the way to the end of a station only to realize that the elevator he sought was on the other end. This sort of tiring and time-consuming detour is entirely avoidable, and could be fixed inexpensively and easily through the simple addition of more signage.

84.     Plaintiffs Ra and Smith, as well as staff and/or members of SDA and the Independent Living Center have used or attempted to use BART's fixed route transportation system and been subjected to discrimination because Defendants have failed to ensure that its stations and staff comply with applicable law with respect to access for persons with mobility disabilities. Plaintiffs have suffered, and continue to suffer, irreparable harm due to the unequal access BART provides. These harms are typical of those experienced by persons with mobility disabilities who use or attempt to use BART. Defendants have been put on notice of these allegations of class-wide violations of federal and state laws regarding people with disabilities. There is no adequate remedy at law, and Plaintiffs have been irreparably harmed by Defendants' acts and omissions.

## CLASS ACTION ALLEGATIONS

85.     Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action, for injunctive and declaratory relief purposes only, on their own behalf and on behalf of all persons similarly situated. The class that Plaintiffs seek to represent is composed of all persons with mobility disabilities who have been and/or are being denied the right to full and equal access to and use and enjoyment of the BART fixed route system due to the access violations described herein. This includes individuals who use, have used, or who have attempted to use the BART fixed route system, as well as those who have been and/or are being deterred from such use as a result of the violations alleged herein. The claims asserted herein are solely for injunctive and declaratory relief for the class; damage claims are not included in this complaint.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

86.     The persons in the class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and to the Court. According to the United States Census Bureau's 2014 American Community Survey, roughly 7% of the United States population reports having a mobility disability that makes walking or climbing stairs either seriously difficult or impossible. Applying this prevalence rate to population numbers from the 2010 Census suggests that well over two hundred thousand class members reside within the three counties—Alameda, San Francisco, and Contra Costa—that the BART system serves. In addition, well over a million people with mobility disabilities visit the Bay Area each year for work and leisure, and many of these travelers either use the BART system, or would do so were they not deterred by its pervasive barriers to access.

87.     There is a well-defined community of interest in the questions of fact and law involved affecting the parties to be represented in that they were all denied their civil rights to full and equal access to and use and enjoyment of the BART fixed route system due to the various violations of state and federal law alleged herein.

88.     Common questions of fact and law predominate, in that Plaintiffs and class members have all been and/or are being denied their civil rights to have Defendants' programs, services and activities provided to them. The common questions of law and fact, shared by Plaintiffs and all class members include:

    a)  Whether Defendants are violating Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, by failing to make their programs, services and activities accessible to and usable by persons with disabilities, and otherwise discriminating against persons with disabilities as set forth herein;

    b)  Whether Defendants are violating Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, by failing to make their programs and activities accessible to and useable by persons with disabilities, and otherwise discriminating against persons with disabilities as set forth above;

//
//

c)   Whether Defendants are violating the Unruh Act, Cal. Civ. Code § 51, *et seq.,* by failing to provide full and equal access to its accommodations, advantages, facilities, privileges, or services to people with disabilities; and

d)   Whether Defendants are violating California Government Code § 11135(a), which prohibits denial of benefits to persons with disabilities of any program or activity that is funded directly by the state or receives any financial assistance from the state.

89.   Plaintiffs will fairly and adequately represent the interests of the class. Plaintiffs are adequate class representatives because they, or the persons they serve, are directly impacted by Defendants' failure to ensure that people with mobility disabilities have full and equal access to the BART system. The interests of Plaintiffs are not antagonistic to, or in conflict with, the interests of the class as a whole.

90.   The attorneys representing the class are highly trained, duly qualified, and very experienced in representing plaintiffs in complex civil rights class actions for injunctive relief, including class actions brought under the ADA, Section 504, the Unruh Act, and California Government Code § 11135.

91.   Plaintiffs' claims are typical of the claims of the class as a whole because the Plaintiffs are similarly affected by Defendants' failure to provide people with mobility disabilities with full and equal access to the BART system.

92.   Defendants have acted and/or failed to act on grounds generally applicable to the class as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole.

93.   References to Plaintiffs shall include each named Plaintiff and each member of the class, unless otherwise indicated.

//

//

//

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**FIRST CAUSE OF ACTION**

**Violation of Title II of the Americans with Disabilities Act**
**42 U.S.C. § 12131,** *et seq.*

94.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

95.     In enacting the Americans with Disabilities Act of 1990, Congress found that physical and mental disabilities did not diminish a person's right to fully participate in all aspects of society, but that people with such disabilities had been precluded from such participation as a consequence of various forms of discrimination, including societal isolation and segregation, outright exclusion, and—most notably for the purposes of this lawsuit—the discriminatory effects of architectural and transportation barriers, and the failure to make modifications to existing facilities, practices, and policies. Congress also stated that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" that "the continuing existence of unfair and unnecessary discrimination denies individuals with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous;" and that "the continuing existence of discrimination and prejudice against people with disabilities "costs the United States billions of dollars in unnecessary expenses." 42 U.S.C. §§ 12101(a)(7)-(8).

96.     The express purpose of the ADA is to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and to ensure that the federal government plays a central role in enforcing the standards established in the Act on behalf of individuals with disabilities. 42 U.S.C. § 12101(b).

97.     Plaintiffs Ra and Smith are "qualified individual[s] with a disability" under the meaning of Title II of the ADA, 42 U.S.C. § 12131(2).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

98.    Organizational Plaintiff Independent Living Center includes staff who are qualified individuals with disabilities under the meaning of Title II of the ADA, 42 U.S.C. § 12131(2).

99.    Organizational Plaintiff SDA includes members and staff who are qualified individuals with disabilities under the meaning of Title II of the ADA, 42 U.S.C. § 12131(2).

100.    At all times relevant to this action, Defendant BART has been a "public entity" within the meaning of Title II of the ADA, and has provided a program, service or activity to the general public.

101.    At all times relevant to this action, Defendant BART has operated a fixed route system of designated public transportation, under the meaning of Title II of the ADA. 42 U.S.C. §12141(3).

102.    Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(l)(i).

103.    Under Title II of the ADA, Defendants are obligated to operate each program, service, or activity "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150(a); *see also* 28 C.F.R. §§ 35.149, 35.151. This is commonly referred to as the obligation to provide people with disabilities with "program access."

104.    Title II of the ADA also states that "it shall be considered discrimination . . . for a public entity to fail to operate a designated public transportation program or activity" conducted in existing facilities so that, "when viewed in its entirety, the program or activity is readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12148; *see also* 49 C.F.R. § 37.61.

105.    Title II of the ADA also states that "it shall be considered discrimination for a public entity to construct a new facility to be used in the provision of designated public transportation services unless such facility is readily accessible to and usable by individuals with

disabilities, including individuals who use wheelchairs." 42 U.S.C. § 12146; *see also* 49 C.F.R. § 37.41(a).

106.    The Department of Transportation's regulations implementing Title II of the ADA state that "[p]ublic and private entities providing transportation services shall maintain in operative condition those features of facilities . . . that are required to make the . . . facilities readily accessible to and usable by individuals with disabilities." 49 C.F.R. § 37.161. These features include, but are not limited to "elevators, signage, and systems to facilitate communication." *Id*.

107.    The regulations implementing Title II of the ADA require Defendants to "make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to avoid discrimination on the basis of disability, or provide program accessibility to their services." *See* 49 C.F.R. § 37.5(i)(3); *see also* 49 C.F.R. § 37.169.

108.    Through the acts and omissions alleged herein, Defendants have, by reason of Plaintiffs' disabilities or those of their staff and/or members excluded Plaintiffs from full and equal participation in the BART programs, services and activities; denied Plaintiffs the benefits of those programs, services, and activities; and subjected Plaintiffs to discrimination in violation of Title II of the ADA, 42 U.S.C. § 12131, *et seq*.

109.    Defendants' acts and omissions alleged herein are in violation of Title II of the ADA and the regulations promulgated thereunder. 42 U.S.C. § 12131, *et seq*.; 49 C.F.R. Pt. 37, *et seq*. These requirements include the general equal access requirements set forth in 42 U.S.C. sections 12132 and 12148, as well as specific access requirements, such as: (i) the requirement to ensure that designated "key stations" are readily accessible to and usable by individuals with disabilities; (ii) the requirement to ensure that newly constructed stations are readily accessible to and usable by people with disabilities; (iii) the requirement to maintain the accessible features of all BART stations in operative condition, so as to ensure that those stations are readily accessible to and usable by individuals with disabilities; (iv) the requirement to promptly repair accessibility features that are damaged and out of order; and (v) the requirement to take reasonable steps to accommodate individuals with disabilities who would otherwise use that

feature, while such repairs are being made. 42 U.S.C. § 12146 (new station obligations); 42 U.S.C. § 12147(b)(1) (key station obligations); 49 C.F.R. §§ 37.161(a-b) (maintenance and repair of accessible features).

110.  Plaintiffs are informed, believe and thereon allege that BART's programs, services, or activities, when viewed in their entirety, are not readily accessible to or usable by people with disabilities because of regular elevator and escalator outages, broken accessible fare gates, broken call boxes, inadequate signage, the failure to keep accessible features in operable and usable condition, other access barriers, and/or Defendants' discriminatory practices, policies, and procedures. *See* 42 U.S.C. § 12132; 28 C.F.R. §§ 35.149, 35.150(a).

111.  Plaintiffs are informed, believe and thereon allege that BART's designated public transportation programs, services or activities conducted in existing facilities are not readily accessible to or usable by people with disabilities when viewed in their entirety because of regular elevator and escalator outages, broken accessible fare gates, broken call boxes, inadequate signage, the failure to keep accessible features in operable and usable condition, other access barriers, and/or Defendants' discriminatory practices, policies, and procedures. *See* 42 U.S.C. § 12148, *see also* 49 C.F.R. § 37.61(a).

112.  Plaintiffs are informed, believe and thereon allege that BART has discriminated and continues to discriminate against people with disabilities by failing to adequately meet the emergency preparedness needs of people with disabilities, and denying the benefits of and excluding people with disabilities from the emergency preparedness programs, services and activities provided to other members of the general public. *See* 42 U.S.C. § 12132; *see also* 28 C.F.R. § 35.130(b)(l)(i).

113.  In addition, Title II of the ADA requires public entities providing designated public transportation to ensure that their designated "key stations" are "made readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12147(b)(1); 49 C.F.R. § 37.47.

114.  BART has designated its 12th Street, 19th Street, 24th/Mission, Balboa Park, Bayfair, Berkeley, Civic Center, Coliseum, Concord, Daly City, El Cerrito Del Norte, Embarcadero, Fremont, Hayward, Lake Merritt, MacArthur, Montgomery, Powell, Richmond,

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

and Walnut Creek stations as key stations within its system. To the extent that any of the above stations are not readily accessible to and usable by people with disabilities—either because of regular elevator and escalator outages, broken accessible fare gates, a failure to keep accessible features in operable and usable condition, a failure to alter key stations so as to ensure ready accessibility, or for any other reason—BART is in violation of its obligations under 42 U.S.C. § 12147(b)(1) and its implementing regulations.

115.    Plaintiffs are informed, believe and thereon allege that BART's failures to maintain the accessible features of BART stations in operative condition are not isolated or temporary occurrences. Rather, they demonstrate a pattern of unreliable service, including regular unscheduled outages unrelated to maintenance or repair. *See* 49 C.F.R. §§ 37.161(a),(c).

116.    Plaintiffs are informed, believe and thereon allege that BART has violated the "reasonable modification" requirements of the ADA and its implementing regulations by, among other things: a) failing to make reasonable modifications to its policies and practices regarding the inspection, maintenance, and cleaning of elevators and other accessible features as necessary to avoid discrimination on the basis of disability or provide program access to its transportation services; b) failing to discontinue or otherwise modify its policy or practice of allowing station agents to turn off elevators during operating hours so as to avoid discrimination on the basis of disability; and c) failing to create or implement an adequate policy, plan, or practice regarding the emergency evacuation of riders with mobility disabilities, despite having such a policy, plan, or practice in place for riders without mobility disabilities. 49 C.F.R. § 37.5(i)(3); 49 C.F.R. § 37.169.

117.    As a direct and proximate result of Defendants' aforementioned acts and omissions, Plaintiffs have suffered, and continue to suffer, injuries for which they have no adequate remedy at law.

118.    Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

119.    Pursuant to 42 U.S.C. § 12133, Plaintiffs are entitled to declaratory and injunctive relief, and to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiffs request relief as set forth below.

## SECOND CAUSE OF ACTION

### Violation of Section 504 of the Rehabilitation Act
### 29 U.S.C. § 794, *et seq.*

120.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

121.    Section 504 of the Rehabilitation Act of 1973, provides in pertinent part that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794.

122.    Plaintiffs are otherwise qualified individuals with disabilities who have been, and continue to be, excluded from participation in, denied the benefit of, and subjected to discrimination in their attempts to receive full and equal access to the programs and activities offered by Defendants. Such exclusion, denial, and discrimination is solely by reason of Plaintiffs' mobility disabilities, or the mobility disabilities of their staff and/or members.

123.    BART has been and is a recipient of federal funds used to operate its programs and activities at all times relevant to this action.

124.    Defendants' acts and omissions, which result in unequal access to the programs and activities provided by Defendants as alleged herein, constitute discrimination in violation of 29 U.S.C. § 794, *et seq.*, and federal regulations issued thereunder. *See* 49 C.F.R. § 27.7(a).

125.    By failing to maintain the accessible features of BART stations, including elevators, escalators, and call boxes, in operative, clean, and usable conditions, Defendants have denied persons with mobility disabilities "an opportunity to participate in or benefit from" its services that is "substantially equal to that afforded persons who are not disabled." 49 C.F.R. §

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

27.7(b)(1)(ii). Defendants' failure to adopt an adequate plan for the emergency evacuation of people with mobility disabilities constitutes a violation of the same regulation. *Id.*

126.    The above-described acts or omissions also deny qualified persons with mobility disabilities benefits or services that are "as effective in affording equal opportunity to obtain the same result or to gain the same benefit" as those available to persons who are not disabled, serve to provide "different or separate aids, benefits, or services" to the class of persons with mobility disabilities, and otherwise limit qualified people with mobility disabilities in the enjoyment of the "rights, privileges, advantages, and opportunities enjoyed by others" using BART's services, in violation of 49 C.F.R. §§ 27.7(b)(1)(iii-iv) and 49 C.F.R. § 27.7(b)(1)(vii).

127.    Defendants' methods of administration, including, but not limited to, their policies and practices regarding the maintenance and cleaning of crucial accessible features also have "the effect of subjecting qualified persons with a disability to discrimination on the basis of disability." 49 C.F.R. § 27.7(b)(4)(i).

128.    The Department of Transportation's regulations implementing 29 U.S.C. § 794 also require recipients of federal funding to "make reasonable accommodations in policies, practices, or procedures when such accommodations are necessary to avoid discrimination on the basis of disability." 49 C.F.R. § 27.7(e).

129.    Defendants have violated this requirement in several ways. For example, Defendants must modify their policies and practices regarding the inspection, maintenance, and cleaning of elevators and other accessible features; their policy or practice of allowing station agents to turn off elevators during operating hours; and their policy or practice regarding the emergency evacuation of riders with mobility disabilities in order to avoid discrimination on the basis of disability. Their failures to do so, absent a showing of undue financial or administrative burden, constitute violations of 49 C.F.R. § 27.7(e).

130.    Finally, Defendants' violations of 42 U.S.C. § 12146, 42 U.S.C. § 12147(b)(1), and 42 U.S.C. § 12148, described above, also constitute violations of 29 U.S.C. § 794. *See* 42 U.S.C. § 12146, 42 U.S.C. § 12147(b)(1), and 42 U.S.C. § 12148.

**COMPLAINT**                                                                                    28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

131.    As a direct and proximate result of Defendants' aforementioned acts and omissions, Plaintiffs have suffered, and continue to suffer, injuries for which they have no adequate remedy at law.

132.    Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

133.    Pursuant to 29 U.S.C. § 794(a), Plaintiffs are entitled to declaratory and injunctive relief, and to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiffs request relief as set forth below.

### THIRD CAUSE OF ACTION

**Violation of the Unruh Civil Rights Act**
**California Civil Code § 51, *et seq.***

134.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

135.    The Unruh Act guarantees, among other things, that persons with disabilities are entitled to "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever" within the jurisdiction of the state of California. Cal. Civ. Code § 51(b).

136.    Defendant BART is a business establishment within the jurisdiction of the state of California, and as such is obligated to comply with the provisions of the Unruh Act. Defendant Crunican is an agent of Defendant BART, and as General Manager, is responsible for ensuring that it complies with the Unruh Act and other applicable laws.

137.    The conduct of Defendants alleged herein constitutes a violation of the Unruh Act, California Civil Code § 51, *et seq*., in that BART users with mobility disabilities are either not provided services that are provided to other patrons, or are provided a service that is inferior to the service provided to patrons without disabilities.  By the acts and omissions alleged herein—including, but not limited to: a) the failure to ensure that the BART system is readily accessible and usable by people with disabilities; b) the failure to maintain the accessible features

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

of BART stations in operative, usable, and clean condition; and c) the failure to create or implement an adequate policy, plan, or practice regarding the emergency evacuation of riders with mobility disabilities, despite having such a policy, plan, or practice in place for riders without mobility disabilities—Defendants have denied Plaintiffs the "full and equal accommodations, advantages, facilities, privileges, or services" guaranteed to them under the Unruh Act. Cal. Civ. Code § 51(b).

138. Defendants have also violated the Unruh Act in that the conduct alleged herein constitutes a violation of various provisions of Title II of the ADA and its implementing regulations, as set forth above. *See* Cal. Civ. Code § 51(f).

139. As a direct and proximate result of Defendants' aforementioned acts and omissions, Plaintiffs have suffered, and continue to suffer, injuries for which they have no adequate remedy at law.

140. Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

141. Pursuant to Cal. Civ. Code § 52, Plaintiffs are entitled to declaratory and injunctive relief and to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiffs request relief as set forth below.

## FOURTH CAUSE OF ACTION

### Violation of California Government Code § 11135

142. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

143. Section 11135(a) of the California Government Code provides in pertinent part: "No person in the State of California shall, on the basis of . . . disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state."

144.    Plaintiffs are informed and believe and thereon allege that BART has been and is a recipient of financial assistance from the state of California for BART system construction and alteration, as well as for the operation of its programs and/or activities.

145.    By the acts and omissions alleged herein—including, but not limited to: a) the failure to ensure that the BART system is readily accessible to and usable by people with disabilities; b) the failure to maintain the accessible features of BART stations in operative, usable, and clean condition; and c) failing to create or implement an adequate policy, plan, or practice regarding the emergency evacuation of riders with mobility disabilities, despite having such a policy, plan, or practice in place for riders without mobility disabilities, Defendants have subjected riders with mobility disabilities to discrimination, and have denied such riders the full and equal benefits of BART services in violation of Government Code § 11135.

146.    California Government Code § 11135(b) also incorporates the protections and prohibitions contained in the ADA and its implementing regulations. Section 11135(b) states in pertinent part, that:

> With respect to discrimination on the basis of disability, programs and activities subject to subdivision (a) shall meet the protections and prohibitions contained in Section 202 of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12132), and the federal rules and regulations adopted in implementation thereof, except that if the laws of this state prescribe stronger protections and prohibitions, the programs and activities subject to subdivision (a) shall be subject to stronger protections and prohibitions.

147.    For all of the reasons outlined above, Defendants have violated and continue to violate the ADA and therefore have violated and continue to violate California Government Code § 11135(b).

148.    Pursuant to California Government Code § 11139, Plaintiffs have a private right of action to enforce California Government Code § 11135(b).

149.    Defendants and their agents and employees have and continue to violate California Government Code § 11135 by unlawfully denying Plaintiffs the benefits of, and unlawfully subjecting Plaintiffs to discrimination under, BART's programs, and activities.

150.    As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, injuries for which they have no adequate remedy at law.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

151.    Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

152.    Pursuant to Cal. Gov't Code § 11139, Plaintiffs are entitled to declaratory and injunctive relief, and to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiffs request relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.    A declaration that Defendants' conduct as alleged herein has violated, and continues to violate, Title II of the Americans with Disabilities Act; Section 504 of the Rehabilitation Act of 1973, California Civil Code § 51; and California Government Code § 11135;

2.    Issuance of a permanent injunction requiring each Defendant to undertake remedial measures to mitigate the effects of Defendants' past and ongoing violations of Title II of the ADA, Section 504 of the Rehabilitation Act, California Civil Code § 51; and California Government Code § 11135, and the regulations promulgated under each of these statutes. At a minimum, Defendants must be enjoined to take the following actions:

   a) Ensure that Defendants' programs, services and activities when viewed in their entirety are readily accessible to and useable by people with disabilities;

   b) Undertake prompt remedial measures to eliminate the physical and policy- or practice-based barriers to make BART accessible to Plaintiffs in accordance with federal and state nondiscrimination statutes;

   c) Submit to inspection by an independent monitor for a specified term, to ensure full and adequate implementation of these remedial measures; and

   d) Remain under this Court's jurisdiction until Defendants fully comply with the Orders of this Court;

3.    An order awarding Plaintiffs reasonable attorneys' fees and costs, as provided by law; and

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1      4.      For such other relief as the Court deems just and proper.

2

3  DATED:  April 5, 2017                    Respectfully Submitted,

4                                           DISABILITY RIGHTS ADVOCATES

5

6

7

8                                           _____
                                            Rebecca S. Williford
                                            Attorneys for Plaintiffs

9

10                                          LEGAL AID AT WORK

11

12

13                                          _____
                                            Jinny Kim
14                                          Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644