1  REBECCA WILLIFORD (CA BAR NO. 269977)
   (rwilliford@dralegal.org)
2  JINNY KIM (CA BAR NO. 208953)
   (jkim@dralegal.org)
3  MELISSA RIESS (CA BAR NO. 295959)
   (mriess@dralegal.org)
4  DISABILITY RIGHTS ADVOCATES
   2001 Center Street, Third Floor
5  Berkeley, California 94704-1204
   Telephone:    (510) 665-8644
6  Facsimile:    (510) 665-8511

7  CHRISTOPHER HO (CA BAR NO. 129845)
   (cho@legalaidatwork.org)
8  LEGAL AID AT WORK
   180 Montgomery Street, Suite 600
9  San Francisco, California 94104
   Telephone:    (415) 864-8848
10 Facsimile:    (415) 593-0096

11 Attorneys for Plaintiffs

12            UNITED STATES DISTRICT COURT

13           NORTHERN DISTRICT OF CALIFORNIA

14 SENIOR AND DISABILITY ACTION, on          Case No. 3:17-cv-01876-LB
   behalf of its members and all others similarly
15 situated; INDEPENDENT LIVING              NOTICE OF JOINT MOTION AND
   RESOURCE CENTER OF SAN                     MOTION FOR ORDER:
16 FRANCISCO; PI RA, on behalf of himself    (1) GRANTING PRELIMINARY
   and all others similarly situated; and IAN     APPROVAL OF SETTLEMENT;
17 SMITH, on behalf of himself and all others (2) GRANTING CERTIFICATION OF
   similarly situated,                            SETTLEMENT CLASS;
18                                            (3) DIRECTING NOTICE TO THE
           Plaintiffs,                            CLASS; AND
19                                            (4) SETTING DATE FOR FAIRNESS
   v.                                             HEARING
20
   SAN FRANCISCO BAY AREA RAPID              AND MEMORANDUM OF POINTS AND
21 TRANSIT DISTRICT and ROBERT M.            AUTHORITIES IN SUPPORT THEREOF
   POWERS, in his official capacity as General
22 Manager of the San Francisco Bay Area Rapid
   Transit District,                         Judge:     Hon. Magistrate Laurel Beeler
23                                            Date:      November 30, 2023
           Defendants.                        Time:      9:30 AM
24                                            Courtroom: Zoom

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   CLEMENT L. GLYNN (CA BAR NO. 57117)
    (cglynn@glynnfinley.com)
2   VICTORIA R. NUETZEL (CA BAR NO. 115124)
    (vnuetze@bart.gov)
3   JONATHAN A. ELDREDGE (CA BAR NO. 238559)
    (jeldredge@glynnfinley.com)
4   GLYNN & FINLEY, LLP
    One Walnut Creek Center
5   100 Pringle Avenue, Suite 500
    Walnut Creek, CA 94596
6   Tel:    (925) 210-2800
    Fax:    (925) 945-1975
7
    *Attorneys for Defendants*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT ON November 30, 2023 at 9:30 a.m. or at such other date and time as the Court may set, Plaintiffs Senior and Disability Action, Independent Living Resource Center of San Francisco, Pi Ra, and Ian Smith, and Defendants San Francisco Bay Area Rapid Transit District and its General Manager (hereafter, "the Parties"), will jointly move the Court for relief as follows:

1. To preliminarily approve the Settlement Agreement and Release of Claims ("the Agreement") between Plaintiffs and Defendants San Francisco Bay Area Rapid Transit District and its General Manager;

2. To certify under Fed. R. Civ. P. 23(a) & (b)(2), for settlement purposes only, a settlement class defined as follows:

> All people with Mobility Disabilities who, at any time between April 5, 2014, and the end of this Settlement's Term, have needed to use or will need to use the Accessible Features of BART's facilities.

3. To approve the proposed notice to be distributed to class members under Fed. R. Civ. P. 23(c)(2) and (e)(1); and

4. To set a fairness hearing consistent with the time frame set forth in this Motion, and to enjoin class members from asserting or maintaining any claims to be released by the Agreement pending the fairness hearing.

The hearing on this motion will take place before United States District Magistrate Judge Laurel Beeler and will be conducted via Zoom (the login information for which can be found on the Court's website at https://www.cand.uscourts.gov/judges/beeler-laurel-lb/).

This motion is based on this Joint Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jinny Kim in Support of the Joint Motion for Preliminary Approval of the Settlement Agreement, the Declaration of Christopher Ho in Support of Joint Motion for Preliminary Approval of the Settlement Agreement, the Declaration of Betty Traynor in Support of Joint Motion for Preliminary Approval of the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Settlement Agreement, the Declaration of Lana Nieves in Support of Joint Motion for

2    Preliminary Approval of the Settlement Agreement, the Declaration of Pi Ra in Support of Joint

3    Motion for Preliminary Approval of the Settlement Agreement, the Declaration of Ian Smith in

4    Support of Joint Motion for Preliminary Approval of the Settlement Agreement, the pleadings

5    and papers on file in this action, and any oral argument that may be presented.

6

7

8    DATED:  October 20, 2023                    Respectfully Submitted,

9                                                DISABILITY RIGHTS ADVOCATES

10

11                                               /s/ Jinny Kim

12                                               _____
                                                 Jinny Kim
13                                               Melissa Riess
                                                 Attorneys for Plaintiffs

14                                               GLYNN, FINLEY, MORTL, HANLON &
                                                 FRIEDENBERG, LLP
15

16                                               /s/ Jonathan Eldredge

17                                               _____
                                                 Jonathan Eldredge
18                                               Attorneys for Defendants

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

2

**TABLE OF CONTENTS**

3    I.      Introduction ............................................................................................... 1

4    II.     Background and Procedural History ......................................................... 1

5            A.      Procedural History ................................................................... 1

6            B.      History of Settlement Negotiations ........................................... 2

7    III.    Summary of Proposed Settlement ............................................................ 2

8            A.      Certification of the Settlement Class ........................................ 2

9            B.      Injunctive Relief ...................................................................... 3

10                   1.      Elevator and Escalator Repairs and Maintenance ........... 3

11                   2.      Elevator and Station Cleanliness ................................... 4

12                   3.      Outage Communication and Mitigation Plan .................. 4

13                   4.      Emergency Preparedness Plan ....................................... 6

14                   5.      Accessibility Features Within BART Stations ................. 6

15                   6.      Training of BART Personnel ......................................... 7

16                   7.      Complaint Procedure .................................................... 7

17            C.      Monitoring ............................................................................... 8

18            D.      Dispute Resolution Procedure .................................................. 8

19            E.      Service Awards to the Named Plaintiffs ................................... 8

20            F.      Released and Unreleased Claims .............................................. 9

21            G.      Reasonable Attorneys' Fees, Costs and Expenses .................... 9

22    IV.    Legal Argument ....................................................................................... 10

23            A.      The Proposed Settlement Class Should be Certified. ............... 10

24                   1.      The Proposed Settlement Class Satisfies the Requirements
                             of Rule 23(a) .............................................................. 10

25
                             a.      The Settlement Class is Sufficiently Numerous ......... 10
26
                             b.      The Settlement Class Satisfies Commonality ............. 11
27
                             c.      Plaintiffs' Claims are Typical of the Settlement
28                                   Class .................................................................... 12

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

d.    Plaintiffs and their Counsel Will Fairly and
       Adequately Protect the Interests of the Class .............................. 13

2.    The Proposed Settlement Class Satisfies Rule 23(b)(2) ......................... 14

B.    The Court Should Preliminarily Approve the Parties' Agreement ...................... 15

1.    Plaintiffs and Their Counsel Have Adequately Represented
       the Class ................................................................................. 16

2.    The Parties' Agreement is the Product of Arms-Length
       Negotiations ........................................................................... 16

3.    The Agreement Will Provide Substantial Relief to Plaintiffs
       and the Class .......................................................................... 17

a.    The potential costs, risks, and delays associated
       with litigation, trial and appeal weigh in favor of
       approval ......................................................................... 18

b.    The terms of the Parties' proposed attorneys' fee
       award also weigh in favor of approval ........................................ 18

4.    The Parties' Agreement Treats All Class Members
       Equitably ............................................................................... 19

C.    The Parties' Proposed Form of Notice Should be Approved ............................... 21

V.    Conclusion ............................................................................... 22

<strong><em>DISABILITY RIGHTS ADVOCATES</em></strong><br>
2001 CENTER STREET, FOURTH FLOOR<br>
BERKELEY, CALIFORNIA 94704-1204<br>
(510) 665-8644

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Council of the Blind v. Astrue*, No. C05-04696 WHA, 2008 WL 4279674
(N.D. Cal. Sept. 11, 2008) ................................................................. 13, 14

*Benitez v. W. Milling, LLC*, No. 1:18-cv-01484-SKO, 2020 WL 309200, at *5
(E.D. Cal. Jan. 21, 2020)........................................................................ 11

*Californians for Disability Rights, Inc. v. California Dep't. of Transp.*, 249 F.R.D.
334 (N.D. Cal. 2008) ......................................................................... 10, 14

*Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL
1984240 (E.D. Cal. Apr. 27, 2020)......................................................... 11, 12

*Cottle v. Plaid Inc.*, 340 F.R.D. 356 (N.D. Cal. 2021) ............................... 10, 16

*Curtis-Bauer v. Morgan Stanley & Co., Inc*, No. C 06-3903 TEH, 2008 WL
4667090 (N.D. Cal. Oct. 22, 2008)............................................................ 18

*Farrar v. Hobby*, 506 U.S. 103 (1992) ...................................................... 19

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982)................................ 12

*Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501 (N.D. Cal. 2011)...... 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................... 13, 16

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)............................. 12

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................ 19

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)............ 19

*In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510
(N.D. Cal. Mar. 28, 2019)................................................................. 15, 16

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)............ 16, 17

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) ............................. 12, 13

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012)................................. 15, 21

*Mullane v. Central Hanover Bank & Trust Co.*, 330 U.S. 306 (1950) ..................... 21

*Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal.
2004) ................................................................................................ 18

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ............................................ 15

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)......................... 20, 21

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018) ....................... 13, 14

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003). ....................................... 20

*T.G. v. Kern County*, No. 1:18-cv-0257 JLT, 2019 WL 6529083, slip op. (E.D. Cal. Dec. 4, 2019) ...................................................................................... 12, 13

*Uschold v. NSMG Shared Services, LLC,* 333 F.R.D. 157 (N.D. Cal. 2019) ........................ 17, 19

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................... 11, 13, 15

*Weeks v. Kellogg Co.*, 2013 WL 6531177 (C.D. Cal. June 10, 2015) ........................................ 20

**Statutes**

29 U.S.C. § 794a(b) ........................................................................................ 18

42 U.S.C. § 12205 .......................................................................................... 18

Cal. Civ. Code § 52(a) . .................................................................................. 18

Cal. Gov't Code § 11139 ................................................................................ 18

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 23(a)(1) ................................................................................. 10

Fed. R. Civ. P. 23(a)(3) ................................................................................. 12

Fed. R. Civ. P. 23(a)(4) ................................................................................. 13

Fed. R. Civ. P. 23(b)(2) ................................................................................. 15

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................ 15

Fed. R. Civ. P. 23(e)(2) ................................................................................. 15

**Other Authorities**

1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 3:72 (6th ed. 2022) ........................................................................................... 14

Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2) ............................ 16

*Manual for Complex Litigation* (Fourth) 21.7 (2004) ............................................. 19

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    INTRODUCTION**

3          This lawsuit and the proposed Class Settlement Agreement ("Agreement") address

4   Plaintiffs' allegations of discrimination against people with mobility disabilities who use

5   wheelchairs, walkers, and other mobility aids, and who rely on elevators or escalators to access

6   the stations and services of the San Francisco Bay Area Rapid Transit District ("BART").  The

7   Agreement provides for significant injunctive relief that will improve BART's accessibility for

8   riders with mobility disabilities.  Among other things, BART has agreed to use its best efforts to

9   renovate elevators and escalators and will make prompt repairs of out of service station elevators

10  and escalators and will implement preventative maintenance plans to provide continuous,

11  uninterrupted service.  The Parties also agreed to emergency evacuation procedures and a

12  protocol for passengers who are separated from their mobility devices during an emergency.  In

13  addition, the proposed settlement calls for training of BART personnel, and includes effective

14  reporting, monitoring and dispute resolution mechanisms.

15         The Agreement is the product of over six years of thorough arm's length negotiations,

16  including multiple settlement meetings, nine settlement conferences, and exchange of

17  information and numerous proposals since August 2017.

18         The Agreement is fair, adequate and reasonable, and satisfies all of the criteria for

19  preliminary settlement approval under Rule 23 of the Federal Rules of Civil Procedure.

20  Accordingly, the Parties respectfully request that the Court: (1) preliminarily approve the

21  settlement; (2) certify the proposed settlement class and appoint the named Plaintiffs as class

22  representatives and Plaintiffs' attorneys as class counsel; (3) approve the Parties' proposed form

23  of notice and distribution plan; and (4) set deadlines for notice, objections, and a final fairness

24  hearing.

25  **II.    BACKGROUND AND PROCEDURAL HISTORY**

26         **A.    Procedural History**

27         On April 5, 2017, Plaintiffs filed a class action complaint for declaratory and injunctive

28  relief for full and equal access to BART's stations and services.  Dkt No. 1.  The complaint

*Senior and Disability Action, et al. v. Bay Area Rapid Transit, et al.*, **Case No. 3:17-cv-01876-LB**
**Joint Motion for Preliminary Approval of Class Settlement**                                    *1*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    asserted claims arising under Title II of the Americans with Disabilities Act, Section 504 of the

2    Rehabilitation Act, the California Unruh Civil Rights Act, and California Government Code §

3    11135.  *Id.* ¶¶ 94-152.  On May 10, 2017, the Defendants answered the complaint.  Dkt No. 20.

4    **B.    History of Settlement Negotiations**

5    On August 22, 2017, the Parties were referred to a settlement conference with Judge

6    Beeler.  Declaration of Jinny Kim in Support of Joint Motion for Preliminary Approval of the

7    Settlement Agreement ("Kim Decl.") ¶ 8.  The Parties, along with named Plaintiffs and BART's

8    representatives, first met with Magistrate Judge Beeler on September 12, 2017.  Dkt No. 41.

9    Thereafter, the Parties attended formal settlement conferences on December 15, 2017, April 3,

10   2018, August 8, 2018, July 1, 2020, July 22, 2020, April 15, 2021, May 22, 2023 and July 12,

11   2023.  Dkt Nos. 48, 54, 59, 99, 103, 115, 136 and 140.  Between settlement conferences, the

12   parties met in-person, over Zoom and over conference calls to discuss settlement provisions and

13   exchanged numerous settlement drafts.  Kim Decl. ¶ 10.

**III.    SUMMARY OF PROPOSED SETTLEMENT**

15   The proposed settlement, attached as Exhibit 1 to the Declaration of Jinny Kim ("Kim

16   Decl."), includes the following terms which were agreed to by the Parties.

17   **A.    Certification of the Settlement Class**

18   The Parties stipulate to a settlement class for injunctive relief under Rules 23(a) & (b)(2)

19   of the Federal Rules of Civil Procedure, defined as:

20   All people with Mobility Disabilities who, at any time between April 5, 2014 and the end

21   of this Settlement's Term, have needed to use or will need to use the Accessible Features of

22   BART's facilities."  Kim Decl., Ex. 1 at 5.  As a practical matter, the settlement class does not

23   expand the class membership or legal claims previously certified by the Court, but rather

24   clarifies the class definition.  As a Rule 23(b)(2) class, no class member may opt out of any

25   provisions of the Settlement.  *See* Kim Decl., Ex. 1 at ¶ 13.

26   ///

27   ///

28   ///

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**B.    Injunctive Relief**

1.    Elevator and Escalator Repairs and Maintenance

BART will implement a Strategic Maintenance Plan to renovate the 87 station elevators. *Id.* at ¶¶ 23-27.  The Strategic Maintenance Plan is attached to the Agreement as Exhibit D and is fully incorporated by reference into the Agreement. *Id.* at ¶ 23.  The Strategic Maintenance Plan identifies 40 elevators most in need of renovation, which BART will renovate within 15 years of the Delayed Implementation Date.[1] *Id.* at ¶¶ 24-25.  After renovation of the initial 40 elevators, BART will make "Reasonable Best Efforts"[2] to renovate additional elevators each year until all elevators in need of renovation have been completed. *Id.* at ¶ 26.  BART will also make prompt repairs of out of service station elevators. *Id.* at ¶ 27.

BART will implement an elevator preventative maintenance plan to provide continuous, uninterrupted elevator service during all passenger service hours, including scheduling maintenance work when trains are not in service. *Id.* at ¶¶ 28-31.

BART will implement an escalator repair plan to replace or "truss up" 40 downtown San Francisco station escalators and add one additional escalator and will use Reasonable Best Efforts to renovate all 40 of these escalators within 10 years of the Delayed Implementation Date. *Id.* at ¶¶ 32-33 and Exhibit F to Settlement Agreement.  The plan has identified 38 escalators in Downtown Oakland and San Francisco and 96 additional escalators to be renovated in the future if funding becomes available. *Id.* at ¶¶ 32, 34.  BART will prioritize critical systems and elevator renovations and repairs over escalators. *Id.*  BART will make prompt

[1] The Parties agreed to a Delayed Implementation Date to allow BART additional time to meet certain terms of the Agreement, due to funding and other difficulties associated with the COVID-19 pandemic. The Delayed Implementation Date will be the earlier of: (1) 90 days after BART ridership reaches 75% of its historic average (based on Fiscal Year 2020 from the Short Range Transit Plan (i.e., 2.43 million paid exits per week)) for four weeks in a row; or (2) June 1, 2024. Kim Decl., Ex. 1 at 2 ("Delayed Implementation Date").

[2] As defined in the Agreement, "Reasonable Best Efforts" means efforts that are reasonable under the circumstances taking into account BART's status as a publicly-funded government entity and the interests of Plaintiffs and the Settlement Class.  "Reasonable Best Efforts" shall not require BART to engage in actions that would result in a fundamental alteration in the nature of its services, programs, or activities, or that would impose undue financial or administrative burdens.  Kim Decl., Ex. 1 at 4 ("Reasonable Best Efforts").

1  repairs to out of service station escalators.  *Id*. at ¶ 35.

2      BART has implemented an escalator preventative maintenance plan to provide

3  continuous, uninterrupted escalator service in the daily commute direction during all passenger

4  service hours.  *Id*. at ¶¶ 36-38 and Exhibit I to Settlement Agreement.

5                    2.       Elevator and Station Cleanliness

6      In an effort to reduce elevator vandalism and soiling, BART will use Reasonable Best

7  Efforts to fund a program to provide elevator attendants at Civic Center, Powell Street,

8  Embarcadero, and Montgomery Street stations for the Settlement Term.  *Id*. at ¶ 39.

9      BART has modified its staffing schedules for System Service Workers to ensure adequate

10  personnel are available to respond promptly when Accessible Features[3] have been soiled.  *Id*. at

11  ¶ 41 and Exhibit H of Settlement Agreement.  The changed staffing schedules are subject to

12  arbitration of a labor grievance.  *Id*.  The staffing schedule provides for timely response to

13  instances of soiling Accessible Features and prioritizes staffing for high traffic stations.  *Id*. at ¶¶

14  44-45.

15                    3.       Outage Communication and Mitigation Plan

16      BART will make Reasonable Best Efforts to promptly (i.e., within 15 minutes of

17  notification of an outage report) communicate elevator and escalator outages to the public

18  through a variety of media, including BART's email subscription, BART's on-demand text

19  messages, and BART's website.  *Id*. at ¶ 48.  BART will continue to update its elevator hotline

20  hourly, ensure that hotline messages are time-stamped, update platform signs and station agent

21  booths with elevator outages, and announce elevator outages on trains and at platforms at least

22  once every fifteen minutes.  *Id*. at ¶¶ 50, 51.  BART will post signage on elevators and station

23  agent booths at least one week before a planned elevator outage when the outage is known more

24  than a week in advance; otherwise, BART will post signage as soon as reasonably possible.  *Id*.

25

26  ────────────────────

27  [3] "Accessible Features" are "those features of San Francisco Bay Area Rapid Transit District
("BART")'s facilities that are required in order to make those facilities readily accessible to and
usable by people with disabilities including (but not limited to) elevators, escalators, accessible
28  fare gates, call boxes, communication systems, and signage."  Kim Decl., Ex. 1 at 2 ("Accessible
Features").

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  at ¶ 52.  BART will promptly communicate escalator outages to the public via on-demand text

2  messages and website postings.  *Id*. at ¶ 53.

3         BART will disseminate and publicize its Access and Elevator Outage Mitigation Plan

4  through standard methods including, but not limited to, email subscriptions, BART's website and

5  BART's social media, and discussing the plan with the BART Accessibility Task Force.  *Id*. at

6  ¶¶ 54, 55, 56.  This plan includes a guide which details mitigation options available when a given

7  BART station elevator is out of service, and which will allow BART personnel to provide people

8  with disabilities with accurate and detailed information on alternative options to reach their

9  destination.  *Id*. at ¶¶ 56-57.

10        BART will also use Reasonable Best Efforts to fund and implement an Elevator Helpline

11  pilot to provide a telephone line staffed seven days a week during BART's hours of operation.

12  *Id*. at ¶ 58.  Helpline staff will provide riders with detailed information regarding alternative

13  routes they can take due to station elevator outages, directions to transit or shuttle pickup

14  locations, and assistance with scheduling on-demand shuttle pickup.  *Id*.  The Helpline number

15  will be included in all elevator outage texts and announcements.  *Id*. at ¶ 59.

16        If funding is obtained, the Elevator Helpline pilot will be implemented within four

17  months and will include a testing period of three months and an additional six months based on

18  the results of the testing period.  BART will gather data regarding Helpline usage, efficacy, and

19  customer satisfaction, which the Parties will review to determine whether the Helpline should be

20  made permanent or modified (if funding is available) or ended.  *Id*. at ¶ 60.

21        BART has developed a pilot program which will test the usage, reliability, and cost-

22  effectiveness of on-demand and staged shuttle service.  *Id*. at ¶ 61.  Although BART does not

23  currently have funding to implement the program, it will use Reasonable Best Efforts to seek

24  funding for implementation.  *Id*.  The program will provide on-demand accessible vehicles

25  during elevator outages at stations with the most limited mitigation alternatives.  *Id*. at ¶¶ 62-69.

26  The program will run for six months and be implemented six months after funding is acquired.

27  *Id*. at ¶ 70.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

4.    Emergency Preparedness Plan

BART will implement an emergency preparedness plan no later than the Delayed Implementation Date.  *Id*. at ¶ 71. The plan includes seven elements: 1) emergency evacuation training for station agents and train operators; 2) inclusion of emergency evacuation procedures related to people with disabilities in BART's regular "toolbox" training of its police officers; 3) updates to BART's website and printed materials related to emergency evacuation procedures; 4) provision and maintenance of 40 "slings" to be used for evacuation of passengers who require physical assistance with evacuation; 5) inclusion of practice in the evacuation of persons with disabilities during BART's regular emergency evacuation drills; 6) implementation of Mobility Device Reunification practices; and 7) use of interactive display screens available on the Fleet of the Future BART cars to textually communicate emergency alerts that are otherwise being communicated audibly.  *Id*. at ¶¶ 72-86.

5.    Accessibility Features Within BART Stations

BART will maintain call boxes in working condition in accordance with the OEM maintenance schedule.  *Id*. at ¶ 87.

BART will solicit and consider comments from Class Counsel regarding any planned material changes to any aspect of a station's path of travel, to ensure that such changes do not inadvertently create access barriers for people with disabilities.  *Id*. at ¶ 89.  BART will make Reasonable Best Efforts to install Clipper pods and/or BART fare gates where elevators are located outside of the paid area in order to bring them inside of the paid area.  *Id*. at ¶ 90. Where the platform elevator is located outside of the paid area, BART will install signage stating that passengers should make use of the service gate and describing the path to the platform and street elevators.  *Id*. at ¶ 91.  BART will work with staff and/or appropriate consultants, as needed, in implementing these improvements.  *Id*. at ¶ 92.

BART will maintain accessible fare gates in working condition in accordance with the OEM maintenance schedule.  *Id*. at ¶ 94.  If an accessible fare gate is out of order, BART will make Reasonable Best Efforts to ensure the station agent is readily available to assist riders with

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Mobility Disabilities in the tagging and processing of tickets.  *Id*. at ¶ 95.

2        BART will ensure that Station Agents do not lock or turn off elevators during BART's

3    operating hours, unless doing so is necessary to perform elevator maintenance or for some

4    legitimate safety-related reason.  *Id*. at ¶ 97.  BART will ensure that swing gates adjacent to

5    Station Agents' booths shall not be locked during BART's operating hours, unless a Station

6    Agent is immediately adjacent to the gates and able to provide passenger assistance.  *Id*. at ¶ 98.

7    BART will also install signage at each swing gate that includes a wheelchair access icon and

8    directs passengers to ask the Station Agent to unlock the gate as necessary.  *Id*.  BART will

9    include these policies in Station Agent trainings and training materials within 90 days after the

10   Effective Date.  *Id*. at ¶ 99.

11                   6.      Training of BART Personnel

12       BART will include 1) federal and state requirements regarding the accessibility of BART

13   stations and service, and 2) disability etiquette, in training both existing and new BART

14   employees involved in ensuring the accessibility of BART stations.  *Id*. at ¶ 101.  BART will

15   continue to supervise and review the performance of all staff coming into direct contact with

16   customers to ensure people with disabilities receive proper service.  *Id*. at ¶ 102.  BART will also

17   employ available disciplinary procedures to ensure accountability of such employees, and each

18   instance of the use of disciplinary procedures related to employee infractions of BART's

19   accessibility policies will be recorded.  *Id*.

20       The Settlement Agreement includes training requirements specific to BART Station

21   Agents, Train Operators, System Service Workers, and Operation Control Center Workers.  *Id*. at

22   ¶¶ 103-106.

23                   7.      Complaint Procedure

24       BART will implement and staff a phone line through which patrons can report

25   accessibility problems or speak to a staff person who has training on accessibility within the

26   BART system.  *Id*. at ¶ 107.  BART will update its website in relevant places to direct patrons

27   with accessibility concerns to the phone line and an online complaint form.  *Id*.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

### C.    Monitoring

BART will designate a "Point Person" to serve as an administrative liaison to Class Counsel for the purpose of compliance, reporting, and monitoring. *Id*. at ¶ 108.  The Settlement Agreement sets forth a schedule for BART to provide progress reports to Class Counsel at least annually for the settlement term. *Id*. at ¶¶ 109-110.

The Parties will also meet annually for the first five years of the settlement term and as needed thereafter in order to discuss BART's implementation of the settlement and any disputes related thereto. *Id*. at ¶ 112.  BART will pay Class Counsel $12,500 per year for years 1-5 of the settlement term, and $10,000 per year for the remainder of the settlement term.  Payment will be made annually on the anniversary of the Effective Date. *Id.* at ¶ 113.

### D.    Dispute Resolution Procedure

The Parties request that Magistrate Judge Beeler retain jurisdiction to enforce the Settlement Agreement and mediate disputes throughout the Term. *Id.* at ¶ 8.  The Parties have agreed to a four-stage procedure to resolve disputes concerning the interpretation, implementation, monitoring, compliance, and modification of the Settlement Agreement. *Id*. at ¶ 122.  First, any Party notified of a dispute shall respond in writing and cure the alleged violation or failure to perform. *Id*. at ¶ 123.  Second, if the alleging Party maintains that the violation or failure to perform has not been cured, the Parties shall meet and confer in order to attempt to resolve the dispute informally. *Id*. at ¶ 124.  Third, if no resolution is reached, or if the Parties do not timely meet and confer, any Party may submit the dispute for mediation by Judge Beeler or another selected mediator. *Id*. at ¶ 125.  Fourth, failing resolution through the above procedures, any Party may submit the dispute to Judge Beeler for decision. *Id*. at ¶ 126.

### E.    Service Awards to the Named Plaintiffs

For services rendered on behalf of the settlement class, BART will pay $7,500.00 each to the named individual Plaintiffs Pi Ra and Ian Smith and $15,000.00 each to the organizational Plaintiffs, Senior and Disability Action and Independent Living Resource Center of San Francisco. *Id*. at ¶ 129.  These service awards will not come out of any monies allocated for

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

disability access improvements but will instead be paid separately by BART.  Each of the named Plaintiffs, and their representatives, participated in the investigation of this case and participated in the negotiations that resulted in the proposed settlement.  Kim Decl. ¶¶ 10, 16, 18.

### F.    Released and Unreleased Claims

The Settlement Class will release BART from all claims for injunctive relief that were or could have been brought in this Action, including claims that may accrue during the Term of the Settlement Agreement.  *Id*. at ¶ 114.  The release is binding upon the Settlement Class through the Term of the Settlement Agreement, and any claims that accrue after the expiration of the Term are not subject to this release.  *Id.* at ¶¶ 115-116.  The release does not apply to claims for damages.  *Id*. at ¶ 118.

### G.    Reasonable Attorneys' Fees, Costs and Expenses

The Parties attended a separate settlement conference in an effort to reach agreement as to the amount of attorney's fees, costs and expenses to be paid by Defendants as part of the settlement.  Kim Decl. ¶ 21.  This settlement conference took place in May 2023 after all injunctive relief terms and an agreement on service payments was resolved.  *Id.* at ¶ 14.  The proposed settlement provides that BART will pay Plaintiffs' Counsel $825,000 for attorneys' fees and costs through final approval.  Kim Decl., Ex. 1 at ¶ 128.  This amount is a significant reduction of Class Counsel's lodestar.  *See* Kim Decl. at ¶¶ 20, 21.  Like the named Plaintiffs' service awards, Plaintiffs' Counsel's attorneys' fees, expenses and costs will not be paid from any monies allocated for disability access improvements, but will instead be paid separately by BART.  Subject to approval by the Court, BART will pay Plaintiffs' Counsel's fees and costs (as agreed between the Parties) within 90 calendar days after the Effective Date.  *Id*. at ¶ 128(c). Plaintiffs' counsel will move for an award of reasonable attorneys' fees, costs and expenses pursuant to Rule 23(h) on a schedule to be set by the Court.  The Declaration of Jinny Kim and the Declaration of Chris Ho accompanied herewith provides a discussion of Plaintiffs' Counsel's lodestar, the work performed in this matter, the rates sought, and the costs and expenses incurred, all of which Plaintiffs allege were reasonable and consistent with applicable legal standards.  *See*

1   Kim Decl. at ¶¶ 6-14, 20-31; Declaration of Chris Ho in Support of Joint Motion for Preliminary

2   Approval of Class Action Settlement ("Ho Decl.") ¶¶ 4-14.

3   **IV.    LEGAL ARGUMENT**

4          **A.    <u>The Proposed Settlement Class Should be Certified.</u>**

5                  1.    <u>The Proposed Settlement Class Satisfies the Requirements of Rule 23(a)</u>

6          The Parties have stipulated to seek certification of the following class, for the purposes of

7   settlement only, pending final approval:

8                  [A]ll people with Mobility Disabilities who, at any time between April 5,

9                  2014 and the end of this Settlement's Term, have needed to use or will

10                 need to use the Accessible Features of BART's facilities.

11  This Settlement Class is slightly different from the class described in Plaintiffs' Complaint,[4] but

12  given the nature of the claims and the injunctive relief at issue, this difference is without effect.

13  As a practical matter, the Settlement Class does not expand the class membership or legal claims

14  set forth in the Complaint but rather clarifies the class definition.  As a Rule 23(b)(2) class, no

15  class member may opt out of any provisions of the settlement.  *See* Kim Decl., Ex. 1 at ¶ 13.

16  The Settlement Class meets the requirements of Rules 23(a) and 23(b)(2) and should be certified.

17                 *a.    The Settlement Class is Sufficiently Numerous*

18         Numerosity is met if "the class is so numerous that joinder of all members is

19  impracticable."  Fed. R. Civ. P. 23(a)(1).  "As a general matter, courts have found that

20  numerosity is satisfied when class size exceeds 40 members...." *Cottle v. Plaid Inc.*, 340 F.R.D.

21  356, 370 (N.D. Cal. 2021) (quoting *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal.

22  2000)).  A court may make common sense extrapolations from statistical data to support a

23  finding that the class is sufficiently numerous that joinder would be impracticable. *Californians*

24  *for Disability Rights, Inc. v. California Dep't. of Transp.*, 249 F.R.D. 334, 347 (N.D. Cal. 2008).

25

26  _____

    [4] The class proposed in Plaintiffs' Complaint was "all persons with mobility disabilities who
27  have been and/or are being denied the right to full and equal access to and use and enjoyment of
    the BART fixed route system due to the access violations described herein. This includes
    individuals who use, have used, or who have attempted to use the BART fixed route system, as
28  well as those who have been and/or being deterred from such use as a result of the violations
    alleged herein."  *See* Complaint, Dkt No. 1 at 19:20-25.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    The settlement class here satisfies this requirement.  According to the United States

2    Census Bureau's 2021 American Community Survey, roughly 7% of the United States

3    population reports having a mobility disability that makes walking or climbing stairs either

4    seriously difficult or impossible.  Applying this prevalence rate to population numbers from the

5    2020 Census suggests that well over three hundred thousand class members reside within the

6    three counties—Alameda, San Francisco, and Contra Costa—that the BART system serves.  In

7    addition, close to 1.5 million people with mobility disabilities visit the Bay Area each year for

8    work and leisure, and many of these travelers either use the BART system, or would do so were

9    they not deterred by its pervasive barriers to access.  Thus, the class is sufficiently numerous.

10                       *b.*       ***The Settlement Class Satisfies Commonality***

11    The "commonality" requirement of Rule 23(a)(2) is satisfied if the claims of Plaintiffs

12    and the proposed class "'depend upon a common contention' that is . . . capable of classwide

13    resolution" —meaning that "a determination of its truth or falsity will resolve an issue that is

14    central to the validity of each one of the [class members'] claims in one stroke."  *Wal-Mart*

15    *Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "Commonality is generally satisfied where …

16    the lawsuit challenges system-wide practice or policy that affects all of the putative class

17    members." *Benitez v. W. Milling, LLC*, No. 1:18-cv-01484-SKO, 2020 WL 309200, at *5 (E.D.

18    Cal. Jan. 21, 2020) (internal quotation marks and citations omitted).

19    The commonality requirement is satisfied here because named Plaintiffs (or the persons

20    they serve) and class members are all subject to the same system-wide policies and practices that

21    they are challenging.  Plaintiffs allege Defendants failed to maintain a transit system readily

22    accessible to persons with mobility disabilities.  *See* Complaint, Dkt No. 1 at ¶¶ 30, 109, 114,

23    137, 145.  Thus, the same factual allegations form the basis of each class member's claims and

24    the legality of these policies and practices under the Americans with Disabilities Act, Section

25    504 of the Rehabilitation Act, the Unruh Act, and the California Government Code is a question

26    capable of class-wide resolution.  *See Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-

27    SKO, 2020 WL 1984240, at *9 (E.D. Cal. Apr. 27, 2020) (finding commonality because

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   allegations that the employer's systematic wage-keeping practices violated state wage-and-hour

2   laws "form[ed] the basis of each [] plaintiff's claims"); *Gray v. Golden Gate Nat'l Recreational*

3   *Area*, 279 F.R.D. 501, 512 (N.D. Cal. 2011) (finding commonality where plaintiffs challenged

4   "uniform policies and practices of failing to ensure" accessibility for people with disabilities).

5   Additionally, because "the changes Plaintiffs seek are to Defendant's system-wide policies and

6   practices," any injunctive and/or declaratory remedy would necessarily apply to the entire class.

7   *See T.G. v. Kern County*, No. 1:18-cv-0257 JLT, 2019 WL 6529083, slip op. at *13 (E.D. Cal.

8   Dec. 4, 2019).  Accordingly, commonality is satisfied because there is a "common contention"

9   binding class members' claims.

10                    *c.*       ***Plaintiffs' Claims are Typical of the Settlement Class***

11          The third element of Rule 23(a) requires that the claims of the representative parties

12  are typical of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  "The requirement of typicality is

13  not primarily concerned with whether each person in a proposed class suffers the same type of

14  damages; rather, it is sufficient for typicality if the plaintiff endured a course of conduct directed

15  against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).  "The test of

16  typicality is whether other members have the same or similar injury, whether the action is based

17  on conduct which is not unique to the named plaintiffs, and whether other class members have

18  been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

19  (9th Cir. 1992) (citation and internal quotation marks omitted).  Because typicality overlaps with

20  commonality, a finding of commonality usually supports a finding of typicality.  *See Gen. Tel.*

21  *Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (commonality and typicality

22  requirements "tend to merge").

23          Here, named Plaintiffs (or the persons they serve) and all members of the class have

24  suffered alleged injuries that are attributable to the same "course of conduct":  Defendant's

25  system-wide policies and practices involving accessibility to its fixed route system for persons

26  with mobility disabilities.  *See, e.g.,* Complaint, Dkt No. 1 at ¶¶ 47-84.  These common injuries

27  encompass the alleged denial of full and equal access to the BART system due to consistent

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

access barriers.  Thus, typicality is established because the claims of each class member, named

and unnamed, resulted from the same course of conduct.  *See Just Film*, 847 F.3d at 1118 ("[I]t is

sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

### d.    *Plaintiffs and their Counsel Will Fairly and Adequately Protect the Interests of the Class*

In determining whether a class has been adequately represented by plaintiffs and counsel,

courts examine whether 1) "named plaintiffs and their counsel have any conflicts of interest with

other class members," and 2) whether "the named plaintiffs and their counsel [will] prosecute the

action vigorously on behalf of the class."  *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007

(9th Cir. 2018) (citation omitted); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

1998); Fed. R. Civ. P. 23(a)(4), *overruled on other grounds by Wal-Mart Stores*, 564 U.S. 338.

Plaintiffs have no known conflicts with the proposed class and their interests are aligned

with those of the other class members.  Kim Decl. ¶ 19; Declaration of Betty Traynor in Support

of Joint Motion for Preliminary Approval of Class Action Settlement ("Traynor Decl.") ¶ 7;

Declaration of Lana Nieves in Support of Joint Motion for Preliminary Approval of Class Action

Settlement ("Nieves Decl.") ¶ 5; Declaration of Pi Ra in Support of Joint Motion for Preliminary

Approval of Class Action Settlement ("Ra Decl.") ¶ 8; Declaration of Ian Smith in Support of

Joint Motion for Preliminary Approval of Class Action Settlement ("Smith Decl.") ¶ 8.

Plaintiffs (or the persons they serve) are directly affected by the policies and practices that they

brought this case to change.  Complaint, Dkt. No. 1 at ¶¶ 47-84; Traynor Decl. ¶¶ 5-6, 9; Nieves

Decl. ¶¶ 3-4; Ra Decl. ¶ 5; Smith Decl. ¶¶ 3-5.  They sought the same relief for themselves and

the class:  compelling Defendant to change its policies and practices to allow people with

mobility disabilities to have full and equal use of the BART transit system.  *See* Complaint, Dkt

No. 1 at ¶¶ 48, 52; *T.G.*, 2019 WL 6529083, slip op. at 14 (finding that Plaintiffs will "fairly and

adequately represent the interests of the class" where plaintiffs sought the same declaratory and

injunctive relief for themselves and the class: changes to policies and practices in Defendant's

juvenile detention facilities).  Plaintiffs' decision to seek only declaratory and injunctive relief

also weighs in their favor.  *See Am. Council of the Blind v. Astrue*, No. C05-04696 WHA, 2008

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    WL 4279674, at *6 (N.D. Cal. Sept. 11, 2008) (holding that where plaintiffs do not seek

2    monetary damages, "[t]he potential for any conflict or collusion is...minimal").

3         Plaintiffs Smith and Ra have also demonstrated a serious commitment to their roles as

4    class representatives.  Ra Decl. ¶¶ 6-8; Smith Decl. ¶¶ 2, 5.  They have met with their attorneys,

5    recorded their experiences with BART's services and facilities in detail as it relates to their

6    claims, participated actively in settlement negotiations, and are willing to continue to prosecute

7    this action if necessary.  Kim Decl. ¶¶ 16-18; Traynor Decl. ¶¶ 8-10; Nieves Decl. ¶¶ 6-7; Ra

8    Decl. ¶¶ 9-12; Smith Decl. ¶¶ 2, 6-7, 9-10.  Similarly, representatives from organizational

9    Plaintiffs Independent Living Resource Center San Francisco and Senior and Disabled Action

10   have dedicated substantial staff time to gathering information from their members and

11   constituents, and participated actively in settlement negotiations on their behalf.  Kim Decl. ¶¶

12   16-18; Traynor Decl. ¶¶ 9-10; Nieves Decl. ¶¶ 7-8.

13        "Adequate representation of counsel is generally presumed in the absence of contrary

14   evidence."  *Californians for Disability Rights*, 249 F.R.D. at 349 (citation omitted); *see* 1

15   William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 3:72 (6th ed. 2022).

16   Adequacy also depends on counsel's qualifications.  *Sali*, 909 F.3d at 1007.  Disability Rights

17   Advocates and Legal Aid at Work have zealously advocated for the class throughout litigation

18   and settlement discussions.  Both organizations have served as class counsel in numerous

19   disability rights cases, many of which have resulted in settlements.  Kim Decl. ¶¶ 27-31; Ho

20   Decl. ¶ 9.  Based on their collective years of experience litigating disability claims, the policy

21   and practice changes and other provisions contained in the Agreement will ensure that Plaintiffs

22   and the class have full and equal access to the BART transit system, making further litigation

23   unnecessary.  Kim Decl. ¶¶ 15, 32-34.  Thus, the class representatives and Plaintiffs' Counsel are

24   adequate to represent the class.

25              2.    The Proposed Settlement Class Satisfies Rule 23(b)(2)

26        A Rule 23(b)(2) class is appropriate if "the party opposing the class has acted or refused

27   to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  declaratory relief is appropriate responding to the class as a whole." Fed. R. Civ. P. 23(b)(2).

2  This provision applies when "a single injunction or declaratory judgment would provide relief to

3  each member of the class." *Wal-Mart Stores*, 564 U.S. at 360. The Rule 23(b)(2) requirement is

4  "unquestionably satisfied when members of a putative class seek uniform injunctive or

5  declaratory relief from policies or practices that are generally applicable to the class as a whole."

6  *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (certifying (b)(2) class of prisoners

7  challenging defendant's centralized policies and practices of "uniform and statewide application"

8  even where those practices "may not affect every member of the proposed class . . . in exactly

9  the same way"); Fed. R. Civ. P. 23(b)(2).

10      Certifying this class under Rule 23(b)(2) is appropriate because the injunctive and

11  declaratory relief provided for in the Settlement Agreement is responsive to each class member's

12  claims regarding the accessibility of the BART transit system.

## B.    The Court Should Preliminarily Approve the Parties' Agreement

14      Federal Rule of Civil Procedure 23(e) conditions the settlement of any class action on

15  court approval, which is intended to ensure that the proposed settlement is "fair, adequate, and

16  free from collusion." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation and

17  internal quotation marks omitted); Fed. R. Civ. P. 23(e)(2). In determining whether to approve a

18  class settlement, the court looks to four factors: (1) whether the class was adequately

19  represented; (2) whether the proposed settlement was negotiated at arm's length; (3) whether the

20  relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and

21  appeal, the terms of any proposed award of attorneys' fees, and other factors; and (4) whether the

22  proposal treats class members equitably relative to one another, focusing on a "'substantive'

23  review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(D); *see also*

24  Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2). At the preliminary

25  approval stage, the Parties must "show that the court will likely be able to" approve their

26  proposed settlement under the Rule 23(e)(2) factors. Fed. R. Civ. P. 23(e)(1)(B); *see also In re*

27  *MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510, at *4 (N.D. Cal.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Mar. 28, 2019).

2          1.    Plaintiffs and Their Counsel Have Adequately Represented the Class

3          In determining whether a class has been adequately represented, courts consider the same

4    "adequacy of representation" questions that are relevant to class certification.  *See id*. at *8;

5    *Cottle*, 340 F.R.D. at 376.  Therefore, for the reasons discussed in § IV(A)(1)(d) above, the Court

6    should find that Plaintiffs and their counsel will fairly and adequately protect the interests of the

7    class.

8          2.    The Parties' Agreement is the Product of Arms-Length Negotiations

9          Preliminary approval is appropriate when an agreement is the product of "serious,

10   informed, non-collusive negotiations" conducted by experienced counsel over an "extended

11   period of time."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal.

12   2007); *see e.g., Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no

13   evidence to suggest that the settlement was negotiated in haste or in the absence of information

14   illuminating the value of plaintiffs' claims").  "The involvement of a neutral or court-affiliated

15   mediator or facilitator in [] negotiations may bear on whether [the negotiations] were conducted

16   in a manner that would protect and further the class interests."  Advisory Committee Notes to

17   2018 Amendments, Fed. R. Civ. P. 23(e)(2).

18         The Parties' proposed agreement is the product of six years of negotiations, including

19   informal discovery consisting of almost 2,000 pages of documents and nine in-person or Zoom

20   settlement conferences before Magistrate Judge Laurel Beeler.  Dkt Nos. 41, 48, 54, 59, 99, 103,

21   115, 136, 140 (Minute Entries re Settlement Conferences); Kim Decl. ¶¶ 9-10.  The Parties have

22   had regular phone, email, and in-person communications to discuss settlement terms, and have

23   exchanged multiple drafts of the settlement agreement after getting input from client

24   constituents.  Kim. Decl. ¶¶ 10-11.  Furthermore, Plaintiffs' Counsel refused to negotiate

25   attorneys' fees and costs until agreement was reached on the remainder of the settlement.  Kim

26   Decl. ¶ 14.  As such, settlement has been reached after extensive, good-faith, informed

27   negotiations and the Court should find that this Rule 23(e)(2) factor weighs in favor of approval.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

3.    <u>The Agreement Will Provide Substantial Relief to Plaintiffs and the Class</u>

2           The third factor requires courts to consider whether "the relief provided for the class is

3   adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

4   effectiveness of any proposed method of distributing relief to the class, including the method of

5   processing class member claims, (iii) the terms of any proposed award of attorney's fees,

6   including any timing of payments; and (iv) any agreement required to be identified under Rule

7   23(e)(3)."  In determining whether the Settlement "falls within the range of possible approval,"

8   the Court must focus on "substantive fairness and adequacy" and "consider plaintiffs' expected

9   recovery balanced against the value of the settlement offer."  *See In re Tableware Antitrust*

10  *Litig.,* 484 F. Supp. 2d at 1080 (citations omitted).  "It is well-settled law that a proposed

11  settlement may be acceptable even though it amounts only to a fraction of the potential recovery

12  that might be available to class members at trial."  *Uschold v. NSMG Shared Services, LLC,* 333

13  F.R.D. 157, 171 (N.D. Cal. 2019) (internal quotation and alterations omitted).

14          Here, the proposed Agreement provides that BART will undertake a program of

15  renovating the most at-risk elevators and escalators in its system and implement a regular

16  maintenance schedule to ensure that its existing facilities remain in good repair.  The Agreement

17  calls for BART to implement an emergency preparedness plan, improve outage communication

18  and mitigation, continue a popular elevator attendant program, prioritize mitigation of soiled

19  accessibility features, and provide for a complaint procedure regarding accessibility issues.

20  BART will also regularly report outage data to the public and Plaintiffs' Counsel.  The

21  Agreement provides for monitoring by Plaintiffs' Counsel and a dispute resolution procedure for

22  resolving any issues that arise during the settlement term.  In sum, the Agreement

23  comprehensively addresses measures to ensure that class members receive reliable access to

24  BART's transportation service, and allows for Plaintiffs' Counsel to monitor implementation of

25  the settlement and provide input from class members regarding ongoing issues.  These changes

26  will resolve the problems that led to the lawsuit.

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**a.    The potential costs, risks, and delays associated with litigation, trial and appeal weigh in favor of approval.**

In contrast, the risks, expense, and likely duration of protracted litigation in this case would be significant in the absence of a settlement.  Plaintiffs would have to prevail on a contested motion for class certification, have summary judgment granted in their favor, win a fact-intensive case at trial, fight off any appeals, and even then may not achieve the extent of injunctive relief that the current Agreement contains.  *See Curtis-Bauer v. Morgan Stanley & Co., Inc*, No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.")*.  Negotiations have already lasted six years, and litigation would likely take many more years and cost additional hundreds of thousands of dollars in fees and costs, all while class members would have to wait to get relief that is essential to their daily lives:  access to the BART system.  Kim Decl. ¶¶ 32-34.  The threat of additional delays and costs is especially significant given delays already caused by the coronavirus pandemic.

Even if Plaintiffs were able to obtain greater relief after a trial on the merits, the inherent risks of litigation, and the protracted delays associated with trial and the inevitable appeals thereafter, weigh heavily in favor of the relief guaranteed to the class members by the proposed settlement on a much faster time frame.  *See Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'") (quoting *Newberg on Class Actions,* § 11:50 at 155 (4th ed. 2002)).

**b.    The terms of the Parties' proposed attorneys' fee award also weigh in favor of approval.**

The statutes at issue in this case allow prevailing plaintiffs to recover their reasonable fees and costs.  *See* 42 U.S.C. § 12205 (ADA); Cal. Civ. Code § 52(a) (Unruh); 29 U.S.C. § 794a(b) (Section 504 of the Rehabilitation Act); Cal. Gov't Code § 11139.  "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the

parties' agreement... courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The "degree of success obtained" is "the most critical factor" to assessing the reasonableness of an attorney fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). This principle is "particularly important in complex civil rights litigation involving numerous challenges to institutional practices...[because] this type of litigation is lengthy and demands many hours of lawyers' services." *Id.* A plaintiff is a prevailing party when they obtain a successful settlement. *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992). Here, Plaintiffs are entitled to recover their reasonably attorneys' fees and costs because they obtained a successful settlement.

Subject to this Court's approval, Defendants have agreed to pay Plaintiffs' Counsel $825,000 to cover their fees and costs through the Court's final approval of the settlement. Kim Decl., Ex. 1 at ¶ 128. This amount is based on a lodestar of $1,161,331. Kim Decl. ¶ 20. This amount was negotiated with the assistance of the Court after all the substantive injunctive relief terms had been resolved. Kim Decl. ¶¶ 14, 21. *See Manual for Complex Litigation* (Fourth) 21.7 at 335 (2004) (separate negotiation of the class settlement before an agreement on fees is generally preferable).

Accordingly, the Court should preliminarily approve Plaintiffs' Counsel's requested fees, costs and expenses. Plaintiffs will provide further detail regarding the requested award in the motion for fees, costs and expenses pursuant to F.R.C.P. 23(h).

### 4.    The Parties' Agreement Treats All Class Members Equitably

"The Court must next examine whether the Settlement Agreement provides preferential treatment to any class member." *Uschold*, 333 F.R.D. at 170 (internal quotation and citation omitted). Under the Parties' proposed settlement, every class member, including Plaintiffs, will benefit from exactly the same injunctive relief. The only difference in recovery between the Plaintiffs and other class members is a service award in the amount of $7,500 each for the individual Plaintiffs and $15,000 each for the organizational plaintiffs.

1       Here, Plaintiffs Ian Smith and Pi Ra and representatives of organizational plaintiffs

2 Senior and Disability Action and Independent Living Resource Center of San Francisco have

3 demonstrated a serious commitment to their roles as class representatives by attending settlement

4 conferences, meeting with attorneys, gathering and assessing documents, answering questions

5 regarding their experiences with BART and about the litigation, and evaluating drafts of the

6 proposed settlement agreement.  Kim Decl. ¶¶ 10, 16-18; Traynor Decl. ¶¶ 9-10; Nieves ¶¶ 7-8;

7 Ra Decl. ¶¶ 10, 12; Smith Decl. ¶¶ 2, 6-7, 10.

8       District courts must evaluate proposed incentive awards individually, using relevant

9 factors that include "the actions the plaintiff has taken to protect the interests of the class, the

10 degree to which the class has benefitted from those actions, ... [and] the amount of time and

11 effort the plaintiff expended in pursuing the litigation."  *Staton v. Boeing Co.*, 327 F.3d 938, 977

12 (9th Cir. 2003).  "Such awards are discretionary ... and are intended to compensate class

13 representatives for work done on behalf of the class, to make up for financial or reputational risk

14 undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a

15 private attorney general."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)

16 (citation omitted).  The factors court use in determining whether to authorize a service award

17 include: "'1) the risk to the class representative in commencing suit, both financial and

18 otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3)

19 the amount of time and effort spent by the class representatives; 4) the duration of the

20 litigation[;] and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a

21 result of the litigation.'"  *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *35 (C.D. Cal. June 10,

22 2015) (quoting *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

23       The service awards are intended to compensate the named Plaintiffs for the important

24 role they played for the benefit of the class, and the time, effort and risks they undertook to

25 secure the result obtained on behalf of the class.  In agreeing to serve as class representatives,

26 they accepted the responsibility of representing the interests of all class members.  Kim Decl. ¶

27 18; Traynor Decl. ¶ 7; Nieves ¶ 5; Ra Decl. ¶ 6; Smith Decl. ¶ 5.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  They provided information during lengthy interviews, assisted in preparing and

2  evaluating the case for settlement, and provided important feedback in the settlement process

3  itself.  Kim Decl. ¶¶ 10, 16-18; Traynor Decl. ¶¶ 9-10; Nieves ¶¶ 7-8; Ra Decl. ¶¶ 6, 10-12;

4  Smith Decl. ¶¶ 2, 6-7.

5  **C.    The Parties' Proposed Form of Notice Should be Approved**

6  Rule 23(e) of the Federal Rules of Civil Procedure provides that "notice of the proposed

7  dismissal or compromise shall be given to all members of the class in a manner that the court

8  directs."  Due process requires that interested parties be provided with notice reasonably

9  calculated under the circumstances to apprise them of the pendency of the action and afford them

10  an opportunity to present their objections.  *Mullane v. Central Hanover Bank & Trust Co.*, 330

11  U.S. 306, 314 (1950).  Notice is satisfactory if it "generally describes the terms of the settlement

12  in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and

13  be heard."  *Lane*, 696 F.3d at 826 (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*,

14  563 F.3d at 962).  The Parties' proposed notice meets this standard and complies with the

15  Northern District's Procedural Guidelines for Class Action Settlements.

16  The notice standard is easily satisfied here.  The notice itself contains contact information

17  for class counsel, a website address that will link to the settlement agreement, instructions for

18  how to access the case docket through PACER or by visiting the office of the Clerk of the Court.

19  Kim Decl., Ex. 1 at Exhibit B.  The notice also includes the date of the final approval hearing,

20  states that the hearing date is subject to change without further notice, and instructs class

21  members on how to get updated on changes to the hearing date.  *Id.*  The notice also explains the

22  terms and form of any objections that class members may have.  *Id.*

23  The Parties have agreed on a notice distribution plan that will effectively inform class

24  members about the settlement and their right to object.  Within 30 days of an order preliminarily

25  approving the settlement ("Order"), Defendants will post a one-page shortform of the notice for

26  four (4) consecutive weeks in the *San Francisco Chronicle*, the *San Francisco Examiner*, and the

27  *Oakland Tribune* in English; *Sing Tao Daily* in Chinese; and *El Observador* in Spanish.  Kim

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Decl., Ex. 1 at ¶ 14(a).  Within 20 days of an Order, Defendants will post the notice on its own

2    website (www.bart.gov) in English, Chinese, and Spanish.  *Id.* at ¶ 14(b).  These notices will

3    comply with Web Content Accessibility Guidelines.  *Id.*  Defendants will also post a link to the

4    notice through email alerts, BART's Facebook page (www.facebook.com/bartsf) and BART's

5    Twitter account (www.twitter.com/sfbart) in this time frame.  *Id.* at ¶ 14(c).  Within 20 days of

6    an Order, Class Counsel will post on their websites a copy of the notice in English, Chinese, and

7    Spanish.  *Id.* at ¶ 14(e).  These notices will also comply with Web Content Accessibility

8    Guidelines.  *Id.*  Within 10 days of an Order, Defendants will provide a copy of the notice to the

9    organizations listed in Exhibit C to the Settlement Agreement.  *Id.* at ¶ 14(d).  The Parties'

10   proposed distribution plan takes into account the breadth and magnitude of the class.

11   Distribution of the notice through publication in multiple local newspapers and posting on

12   multiple accessible websites, coupled with providing notice to organizations that serve individual

13   class members, will ensure that the notice reaches the maximum number of class members in the

14   most efficient and cost-effective manner.

15         The Notice and proposed notice process satisfies Rule 23(c) because it fairly apprises

16   class members of the settlement and their options with respect thereto, and fully satisfies due

17   process requirements for a Rule 23(b)(2) settlement class with no opt out rights.  This Court

18   should approve the proposed notice and direct that it be distributed.

19   **V.      CONCLUSION**

20         The settlement of this litigation achieves important benefits for Plaintiffs and all members

21   of the proposed Settlement Class.  The Parties respectfully request that the Court enter the

22   proposed order preliminarily approving the Agreement, preliminarily certifying the proposed

23   class, and approving the proposed notice form and notice plan.

24   ///

25   ///

26   ///

27   ///

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    DATED:  October 20, 2023                    Respectfully Submitted,

2

3                                                DISABILITY RIGHTS ADVOCATES

4                                                /s/ Jinny Kim

5                                                _____
                                                 Jinny Kim
6                                                Attorneys for Plaintiffs

7

8                                                GLYNN, FINLEY, MORTL, HANLON &
                                                 FRIEDENBERG, LLP
9

10                                               /s/ Jonathan Eldredge

11                                               _____
                                                 Jonathan Eldredge
                                                 Attorneys for Defendants
12

13

14                               **FILERS ATTESTATION**

15           Pursuant to Civil Local Rule 5-1(h)(3), I, Jinny Kim, attest that concurrence in the filing

16   of this document has been obtained from the signatory.

17

18                                       /s/ Jinny Kim

19                                       _____  _____
                                         Jinny Kim

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644