1  REBECCA WILLIFORD (CA BAR NO. 269977)
   (rwilliford@dralegal.org)
2  JINNY KIM (CA BAR NO. 208953)
   (jkim@dralegal.org)
3  MELISSA RIESS (CA BAR NO. 295959)
   (mriess@dralegal.org)
4  DISABILITY RIGHTS ADVOCATES
   2001 Center Street, Third Floor
5  Berkeley, California 94704-1204
   Telephone:    (510) 665-8644
6  Facsimile:    (510) 665-8511

7  CHRISTOPHER HO (CA BAR NO. 129845)
   (cho@legalaidatwork.org)
8  LEGAL AID AT WORK
   180 Montgomery Street, Suite 600
9  San Francisco, California 94104
   Telephone:    (415) 864-8848
10 Facsimile:    (415) 593-0096

11 Attorneys for Plaintiffs

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14 SENIOR AND DISABILITY ACTION, on          Case No. 3:17-cv-01876-LB
   behalf of its members and all others similarly
15 situated; INDEPENDENT LIVING               NOTICE OF JOINT MOTION AND
   RESOURCE CENTER OF SAN                     MOTION FOR ORDER:
16 FRANCISCO; PI RA, on behalf of himself     (1) GRANTING FINAL APPROVAL OF
   and all others similarly situated; and IAN     SETTLEMENT;
17 SMITH, on behalf of himself and all others (2) CERTIFYING SETTLEMENT CLASS;
   similarly situated,                            AND
18                                             (3) RETAINING JURSIDICTION OVER
           Plaintiffs,                             ENFORCEMENT OF THE
19                                                 SETTLEMENT;
   v.
20                                             AND MEMORANDUM OF POINTS AND
   SAN FRANCISCO BAY AREA RAPID               AUTHORITIES IN SUPPORT THEREOF
21 TRANSIT DISTRICT and ROBERT M.
   POWERS, in his official capacity as General
22 Manager of the San Francisco Bay Area Rapid Judge:    Hon. Magistrate Laurel Beeler
   Transit District,                          Date:     April 18, 2024
23                                             Time:     9:30 AM
           Defendants.                         Courtroom: B, 15th Floor
24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   CLEMENT L. GLYNN (CA BAR NO. 57117)
    (cglynn@glynnfinley.com)
2   VICTORIA R. NUETZEL (CA BAR NO. 115124)
    (vnuetze@bart.gov)
3   JONATHAN A. ELDREDGE (CA BAR NO. 238559)
    (jeldredge@glynnfinley.com)
4   GLYNN & FINLEY, LLP
    One Walnut Creek Center
5   100 Pringle Avenue, Suite 500
    Walnut Creek, CA 94596
6   Tel:    (925) 210-2800
    Fax:    (925) 945-1975
7
    Attorneys for Defendants
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE THAT ON April 18, 2024 at 9:30 a.m. or at such other date

4 and time as the Court may set, Plaintiffs Senior and Disability Action, Independent Living

5 Resource Center of San Francisco, Pi Ra, and Ian Smith, and Defendants San Francisco Bay

6 Area Rapid Transit District and its General Manager (hereafter, "the Parties"), will jointly move

7 the Court for relief as follows:

8   1.  Final approval of the Settlement Agreement and Release of Claims ("the Agreement",

9       Dkt. No. 145-1, Ex. 1) between Plaintiffs and Defendants San Francisco Bay Area

10      Rapid Transit District and its General Manager;

11  2.  Certification under Fed. R. Civ. P. 23(a) & (b)(2), for settlement purposes only, of a

12      settlement class defined as follows:

13          All people with Mobility Disabilities who, at any time between April 5, 2014, and
            the end of this Settlement's Term, have needed to use or will need to use the
14          Accessible Features of BART's facilities.

15  3.  Retain jurisdiction during the term of the Agreement for the purpose of enforcement

16      thereof.

17

The hearing on this motion will take place before United States District Magistrate Judge

18 Laurel Beeler in Courtroom B, 15th Floor.

19

This motion is based on this Joint Notice of Motion and Motion, the accompanying

20 Memorandum of Points and Authorities, the Declaration of Jinny Kim in Support of the Joint

21 Motion for Final Approval of the Settlement Agreement, the Declaration of Laura Alvarenga

22 Scalia  in Support of Joint Motion for Final Approval of the Settlement Agreement, the

23 Declaration of Jonathan Eldredge in Support of the Joint Motion for Final Approval of the

24 Settlement Agreement, the Declaration of Betty Traynor in Support of Joint Motion for Final

25 Approval of the Settlement Agreement, the Declaration of Lana Nieves in Support of Joint

26 Motion for Final Approval of the Settlement Agreement, the Declaration of Pi Ra in Support of

27 Joint Motion for Final Approval of the Settlement Agreement, the Declaration of Ian Smith in

28

1   Support of Joint Motion for Final Approval of the Settlement Agreement, the pleadings and

2   papers on file in this action, and any oral argument that may be presented.

3

4   DATED:  April 4, 2024                         Respectfully Submitted,

5

6                                                DISABILITY RIGHTS ADVOCATES

7

8                                                   /s/ Jinny Kim
                                                 Jinny Kim
                                                 Melissa Riess
9                                                Attorneys for Plaintiffs

10                                               GLYNN, FINLEY, MORTL, HANLON &
                                                 FRIEDENBERG, LLP
11

12

13                                                  /s/ Jonathan Eldredge
                                                 Jonathan Eldredge
14                                               Attorneys for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# **TABLE OF CONTENTS**

I.    Introduction ............................................................................................. 1

II.   Background and Procedural History ....................................................... 2

      A.    Procedural History ...................................................................... 2

      B.    The Court Preliminarily Approved the Agreement and Notice Has
            Been Provided. ............................................................................ 2

III.  Summary of Proposed Settlement ........................................................... 3

      A.    Certification of the Settlement Class ......................................... 3

      B.    Injunctive Relief ......................................................................... 3

            1.    Elevator and Escalator Repairs and Maintenance ........... 3

            2.    Elevator and Station Cleanliness ..................................... 5

            3.    Outage Communication and Mitigation Plan .................. 5

            4.    Emergency Preparedness Plan .......................................... 6

            5.    Accessibility Features Within BART Stations ................ 6

            6.    Training of BART Personnel ............................................ 7

            7.    Complaint Procedure ....................................................... 7

      C.    Monitoring ................................................................................... 8

      D.    Dispute Resolution Procedure .................................................... 8

      E.    Service Awards to the Named Plaintiffs .................................... 8

      F.    Released and Unreleased Claims ................................................ 9

      G.    Reasonable Attorneys' Fees, Costs and Expenses ..................... 9

IV.   Legal Argument ..................................................................................... 10

      A.    The Court Has Conditionally Certified the Settlement Class. ... 10

            1.    The Proposed Settlement Class Satisfies the Requirements
                  of Rule 23(a). ................................................................. 10

                  a.    The Settlement Class is Sufficiently Numerous. .......... 11

                  b.    The Settlement Class Satisfies Commonality. .............. 11

|   |   | c. | Plaintiffs' Claims are Typical of the Settlement Class. | 12 |
|   |   | d. | Plaintiffs and their Counsel Will Fairly and Adequately Protect the Interests of the Class. | 13 |
|   | 2. |   | The Proposed Settlement Class Satisfies Rule 23(b)(2). | 15 |
| B. |   |   | The Court Should Grant Final Approval of the Parties' Agreement. | 15 |
|   | 1. |   | Plaintiffs and Their Counsel Have Adequately Represented the Class. | 16 |
|   | 2. |   | The Parties' Agreement is the Product of Arms-Length Negotiations. | 16 |
|   | 3. |   | The Agreement Will Provide Substantial Relief to Plaintiffs and the Class. | 17 |
|   |   | a. | The potential costs, risks, and delays associated with litigation, trial and appeal weigh in favor of approval. | 18 |
|   |   | b. | The terms of the Parties' proposed attorneys' fee award also weigh in favor of approval. | 19 |
|   | 4. |   | The Parties' Agreement Treats All Class Members Equitably | 20 |
| C. |   |   | The Proposed Service Awards are Reasonable. | 20 |
|   | 1. |   | The Class Representatives Devoted Significant Amounts of Time and Effort to this Settlement. | 21 |
|   | 2. |   | The Class Representatives' Efforts Resulted in Substantial Benefits to the Class by Way of Settlement. | 22 |
|   | 3. |   | Notoriety Experienced by the Class Representatives. | 23 |
|   | 4. |   | The Duration of the Lawsuit. | 23 |
|   | 5. |   | The Class Representatives Faced Risk in Commencing Suit. | 24 |
|   | 6. |   | The Class Representatives Have Acted in the Best Interests of the Class. | 24 |
|   | 7. |   | The Proposed Service Awards Promote the Public Policies Underlying the Statutory Schemes Upon Which Plaintiffs' Claims are Based. | 25 |
| V. | Conclusion |   |   | 25 |

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**

4

*Am. Council of the Blind v. Astrue*, No. C 05-04696 WHA, 2008 WL 4279674
(N.D. Cal. Sept. 11, 2008) ................................................................................ 14

5

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ................................... 20

6

7

*Benitez v. W. Milling, LLC*, No. 1:18-cv-01484-SKO, 2020 WL 309200 (E.D. Cal.
Jan. 21, 2020) ................................................................................................. 11

8

*Bolton v. U.S. Nursing Corp.*, No. C 12-4466 LB, 2013 WL 5700403 (N.D. Cal.
Oct. 18, 2013) ................................................................................................. 21

9

Cal. Civ. Code § 52(a) .......................................................................................... 19

10

11

*Californians for Disability Rights, Inc. v. California Dep't. of Transp.*, 249 F.R.D.
334 (N.D. Cal. 2008) .................................................................................. 11, 14

12

*Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL
1984240 (E.D. Cal. Apr. 27, 2020) ...................................................................... 12

13

*Cottle v. Plaid Inc.*, 340 F.R.D. 356 (N.D. Cal. 2021) ............................................... 11, 16

14

15

*Curtis-Bauer v. Morgan Stanley & Co., Inc*, No. C 06-3903 TEH, 2008 WL
4667090 (N.D. Cal. Oct. 22, 2008) ............................................................... 18, 21

16

*Farrar v. Hobby*, 506 U.S. 103 (1992) .................................................................. 19

17

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL
1687832 (N.D. Cal. Apr. 22, 2010) ...................................................................... 21

18

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) ............................................. 13

19

20

*Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862 (N.D.
Cal. Jan. 26, 2007) .......................................................................................... 21

21

*Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501 (N.D. Cal. 2011) ...................... 12

22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................... 13, 16

23

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ............................................ 12

24

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................... 19

25

*In re Apple Inc. Device Performance Litig.*, 50 F.4th 769 (9th Cir. 2022) ............................. 20

26

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........................... 19

27

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................... 16, 17

28

*In re Toys R Us*, 295 F.R.D. 438 (C.D. Cal. 2014) ...................................................... 24

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017). ..................................................... 12, 13

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ........................................................ 16

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ................................................................ 15

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................................ 20

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018) ................................. 13, 15

*Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM (JCx), 2012 WL
    10274679 (E.D. Cal. Nov. 13, 2012) .................................................. 21, 22, 23

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .............................. 20, 21, 22

*T.G. v. Kern County*, No. 1:18-cv-0257 JLT, 2019 WL 6529083 (E.D. Cal. Dec.
    4, 2019) ................................................................................................ 12, 14

*Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157 (N.D. Cal. 2019) ................ 17, 20

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) ..................... 24

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................ 11, 15

*Wilson v. Airborne, Inc.*, No. EDCV 07-770-VAP (OPx), 2008 WL 3854963
    (C.D. Cal. Aug. 13, 2008) ........................................................................ 23

**Statutes**

29 U.S.C. § 794 ............................................................................................ 25

29 U.S.C. § 794a(b) ..................................................................................... 19

42 U.S.C. § 12101(a)(7) ............................................................................. 25

42 U.S.C. § 12205 ....................................................................................... 19

Cal. Gov't Code § 11139 ............................................................................. 19

**Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................................... 11

Fed. R. Civ. P. 23(a)(3) ............................................................................... 12

Fed. R. Civ. P. 23(a)(4) ............................................................................... 13

Fed. R. Civ. P. 23(b)(2) ............................................................................... 15

Fed. R. Civ. P. 23(e)(2) ............................................................................... 16

Fed. R. Civ. P. 23(e)(2)(A)-(D) .................................................................. 16

Fed. R. Civ. P. 23(e)(2)(C) .......................................................................... 17

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    **Other Authorities**

2    Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2) ............................... 16

3    William B. Rubenstein, *Newberg and Rubenstein on Class Actions* (6th ed. 2022) .................... 14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This lawsuit and the proposed Class Settlement Agreement ("Agreement") address Plaintiffs' allegations of discrimination against people with mobility disabilities who use wheelchairs, walkers, and other mobility aids, and who rely on elevators or escalators to access the stations and services of the San Francisco Bay Area Rapid Transit District ("BART").  The Agreement provides for significant injunctive relief that will improve BART's accessibility for riders with mobility disabilities.  Among other things, BART has agreed to use its reasonable best efforts to renovate elevators and escalators, make prompt repairs of out of service station elevators and escalators, and implement preventative maintenance plans to provide continuous, uninterrupted service.  The Parties also agreed to emergency evacuation procedures and a protocol for passengers who are separated from their mobility devices during an emergency.  In addition, the proposed settlement calls for training of BART personnel, and includes effective reporting, monitoring and dispute resolution mechanisms.

The Agreement is the product of over six years of thorough arm's length negotiations, including multiple settlement meetings, nine settlement conferences, and exchange of information and numerous proposals since August 2017.

On November 30, 2023, the Court preliminarily approved the settlement agreement; conditionally certified the class, conditionally appointed Plaintiffs Senior and Disability Action, Independent Living Resource Center of San Francisco, Pi Ra, and Ian Smith as class representatives, and conditionally appointed Disability Rights Advocates and Legal Aid at Work as Class Counsel; and approved the Class Notice submitted at Dkt. No. 145-1, pp. 63-71 and directed the parties to disseminate it to the Class.  Dkt. No. 149 (Order Granting Preliminary Approval).  Class Counsel and BART distributed the notice in accordance with the Agreement and this court's order.  *See* Declaration of Jinny Kim in Support of Joint Motion for Final Approval of Settlement Agreement ("Kim FA Decl.") at ¶¶ 2-11; Declaration of Laura Alvarenga Scalia in Support of the Joint Motion for Final Approval of the Settlement Agreement

1  ("Alvarenga Scalia Decl.") at ¶¶ 4-8; Declaration of Jonathan Eldredge in Support of the Joint

2  Motion for Final Approval of the Settlement Agreement ("Eldredge Decl.") at ¶¶ 3-4.  To date,

3  no objections to the Settlement Agreement have been submitted.  Kim FA Decl. ¶ 12; Alvarenga

4  Scalia Decl. ¶ 9.

5      The Agreement is fair, adequate and reasonable, and satisfies all of the criteria for final

6  settlement approval under Rule 23 of the Federal Rules of Civil Procedure.  Accordingly, the

7  Parties respectfully request that the Court:  (1) approve the settlement; (2) certify the proposed

8  settlement class and appoint the named Plaintiffs as class representatives and Plaintiffs' attorneys

9  as class counsel; and (3) retain jurisdiction during the term of the Agreement for the purpose of

10 enforcement of the Agreement.

11 **II.    BACKGROUND AND PROCEDURAL HISTORY**

12     **A.    Procedural History**

13     On April 5, 2017, Plaintiffs filed a class action complaint for declaratory and injunctive

14 relief for full and equal access to BART's stations and services, alleging claims under federal

15 and state disability law.  Dkt No. 1.  Thereafter, the Parties were referred to a settlement

16 conference with Judge Beeler.  *See* Dkt. No. 145-1 (Declaration of Jinny Kim in Support of Joint

17 Motion for Preliminary Approval of the Settlement Agreement ("Kim PA Decl.")) at ¶ 8.  The

18 Parties met with Magistrate Judge Beeler extensively from September 2017 through July 2023.

19 Dkt Nos. 48, 54, 59, 99, 103, 115, 136 and 140; Kim PA Decl. ¶ 10.

20     **B.    The Court Preliminarily Approved the Agreement and Notice Has Been Provided.**

21     On October 20, 2023, the Parties submitted their Joint Motion for Preliminary Approval

22 of the Settlement Agreement.  Dkt. No. 145.  On November 30, 2023, the Court preliminarily

23 approved the settlement agreement; conditionally certified the class, conditionally appointed

24 Plaintiffs Senior and Disability Action, Independent Living Resource Center of San Francisco, Pi

25 Ra, and Ian Smith as class representatives, and conditionally appointed Disability Rights

26 Advocates and Legal Aid at Work as Class Counsel; and approved the Class Notice and directed

27 the parties to disseminate it to the Class.  Dkt. No. 149 (Order Granting Preliminary Approval).

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Class Counsel and BART distributed the notice in accordance with the Agreement and

2    this Court's order.  Kim FA Decl. ¶¶ 2-11; Alvarenga Scalia Decl. ¶¶ 4-8; Eldredge Decl. ¶¶ 3-4.

3    Class Counsel Disability Rights Advocates and Legal Aid at Work published a copy of the class

4    notice in English, Chinese and Spanish on their respective websites in a format compliant with

5    WCAG.  Kim FA Decl. ¶¶ 3, 8-9; Alvarenga Scalia Decl. ¶¶ 5, 7.  BART published the short

6    form of the class notice for four consecutive weeks in the San Francisco Chronicle, the San

7    Francisco Examiner, and the Oakland Tribune, in English; Sing Tao Daily in Chinese; and El

8    Observador in Spanish.  Eldredge Decl. ¶ 3.  BART also posted a copy of the class notice in

9    English, Chinese and Spanish on its website, and posted links to the class notice on link to the

10    Notice of Settlement on its Facebook page (www.facebook.com/bartsf) page and Twitter

11    (https://twitter.com/sfbart) account, and made a link to the class notice available in its email

12    alerts.  *Id.*  BART also made a copy of the class notice and associated documents available to

13    organizations specified in the settlement agreement, and pursuant to the Class Action Fairness

14    Act, each of the respective state attorney generals and/or appropriate state official and the

15    Attorney General of the United States.  Eldredge Decl. ¶ 4.

16    To date, no objections to the Settlement Agreement have been submitted.  Kim FA Decl.

17    ¶ 12; Alvarenga Scalia Decl. ¶ 8.

18    **III.    SUMMARY OF PROPOSED SETTLEMENT**

19    The proposed settlement (submitted to the Court at Dkt. No. 145-1, p. 15 (Exhibit 1)),

20    includes the following terms which were agreed to by the Parties.

21    **A.    Certification of the Settlement Class**

22    The Parties stipulate to a settlement class for injunctive relief under Rules 23(a) & (b)(2)

23    of the Federal Rules of Civil Procedure, discussed further below at Section IV.A.

24    **B.    Injunctive Relief**

25    **1.    Elevator and Escalator Repairs and Maintenance**

26    BART will implement a Strategic Maintenance Plan to renovate the 87 station elevators.

27    Kim PA Decl., Ex. 1 at ¶¶ 23-27.  The Strategic Maintenance Plan is attached to the Agreement

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

as Exhibit D and is fully incorporated by reference into the Agreement.  *Id*. at ¶ 23.  The Strategic Maintenance Plan identifies 40 elevators most in need of renovation, which BART will renovate within 15 years of the Delayed Implementation Date.[1]  *Id*. at ¶¶ 24-25.  After renovation of the initial 40 elevators, BART will make "Reasonable Best Efforts"[2] to renovate additional elevators each year until all elevators in need of renovation have been completed.  *Id*. at ¶ 26.  BART will also make prompt repairs of out of service station elevators.  *Id*. at ¶ 27.

BART will implement an elevator preventative maintenance plan to provide continuous, uninterrupted elevator service during all passenger service hours, including scheduling maintenance work when trains are not in service.  *Id*. at ¶¶ 28-31.

BART will implement an escalator repair plan to replace or "truss up" 40 downtown San Francisco station escalators and add one additional escalator and will use Reasonable Best Efforts to renovate all 40 of these escalators within 10 years of the Delayed Implementation Date.  *Id*. at ¶¶ 32-33 and Exhibit F to Settlement Agreement.  The plan has identified 38 escalators in Downtown Oakland and San Francisco and 96 additional escalators to be renovated in the future if funding becomes available.  *Id*. at ¶¶ 32, 34.  BART will prioritize critical systems and elevator renovations and repairs over escalators.  *Id*.  BART will make prompt repairs to out of service station escalators.  *Id*. at ¶ 35.

BART has implemented an escalator preventative maintenance plan to provide continuous, uninterrupted escalator service in the daily commute direction during all passenger service hours.  *Id*. at ¶¶ 36-38 and Exhibit I to Settlement Agreement.

---

[1] The Parties agreed to a Delayed Implementation Date to allow BART additional time to meet certain terms of the Agreement, due to funding and other difficulties associated with the COVID-19 pandemic. The Delayed Implementation Date will be the earlier of: (1) 90 days after BART ridership reaches 75% of its historic average (based on Fiscal Year 2020 from the Short Range Transit Plan (i.e., 2.43 million paid exits per week)) for four weeks in a row; or (2) June 1, 2024. Kim PA Decl., Ex. 1 at 2 ("Delayed Implementation Date").

[2] As defined in the Agreement, "Reasonable Best Efforts" means efforts that are reasonable under the circumstances taking into account BART's status as a publicly-funded government entity and the interests of Plaintiffs and the Settlement Class.  "Reasonable Best Efforts" shall not require BART to engage in actions that would result in a fundamental alteration in the nature of its services, programs, or activities, or that would impose undue financial or administrative burdens.  Kim PA Decl., Ex. 1 at p. 4 ("Reasonable Best Efforts").

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

2.    Elevator and Station Cleanliness

In an effort to reduce elevator vandalism and soiling, BART will use Reasonable Best Efforts to fund a program to provide elevator attendants at Civic Center, Powell Street, Embarcadero, and Montgomery Street stations for the Settlement Term.  Kim PA Decl., Ex. 1 at ¶ 39.

BART has modified its staffing schedules for System Service Workers to ensure adequate personnel are available to respond promptly when Accessible Features[3] have been soiled.  *Id*. at ¶ 41 and Exhibit H of Settlement Agreement.

3.    Outage Communication and Mitigation Plan

BART will make Reasonable Best Efforts to promptly communicate elevator and escalator outages to the public through a variety of media, including public announcements, platform signs, BART's email subscription, BART's on-demand text messages, and BART's website.  Kim PA Decl., Ex. 1. at ¶¶ 48, 50-53.  BART will disseminate and publicize its Access and Elevator Outage Mitigation Plan, which includes mitigation options available when a given BART station elevator is out of service, and alternative options to reach destinations.  *Id*. at ¶¶ 54-57.  BART will also use Reasonable Best Efforts to fund and implement an Elevator Helpline pilot.  *Id*. at ¶ 58.  Helpline staff will provide riders with detailed information regarding alternative routes they can take due to station elevator outages, directions to transit or shuttle pickup locations, and assistance with scheduling on-demand shuttle pickup.  *Id*.  The Helpline number will be included in all elevator outage texts and announcements.  *Id*. at ¶ 59.

BART has developed a pilot program which will test the usage, reliability, and cost-effectiveness of on-demand and staged shuttle service.  *Id*. at ¶ 61.  Although BART does not currently have funding to implement the program, it will use Reasonable Best Efforts to seek funding for implementation.  *Id*.  The program will provide on-demand accessible vehicles

---

[3] "Accessible Features" are "those features of San Francisco Bay Area Rapid Transit District ("BART")'s facilities that are required in order to make those facilities readily accessible to and usable by people with disabilities including (but not limited to) elevators, escalators, accessible fare gates, call boxes, communication systems, and signage."  Kim PA Decl., Ex. 1 at 2 ("Accessible Features").

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    during elevator outages at stations with the most limited mitigation alternatives. *Id*. at ¶¶ 62-69.

2    The program will run for six months and be implemented six months after funding is acquired.

3    *Id*. at ¶ 70.

4              4.    Emergency Preparedness Plan

5              BART will implement an emergency preparedness plan no later than the Delayed

6    Implementation Date. *Id*. at ¶ 71. The plan includes seven elements: 1) emergency evacuation

7    training for station agents and train operators; 2) inclusion of emergency evacuation procedures

8    related to people with disabilities in BART's regular "toolbox" training of its police officers; 3)

9    updates to BART's website and printed materials related to emergency evacuation procedures; 4)

10   provision and maintenance of 40 "slings" to be used for evacuation of passengers who require

11   physical assistance with evacuation; 5) inclusion of practice in the evacuation of persons with

12   disabilities during BART's regular emergency evacuation drills; 6) implementation of Mobility

13   Device Reunification practices; and 7) use of interactive display screens available on the Fleet of

14   the Future BART cars to textually communicate emergency alerts that are otherwise being

15   communicated audibly. *Id*. at ¶¶ 72-86.

16             5.    Accessibility Features Within BART Stations

17             BART will maintain call boxes in working condition in accordance with the OEM

18   maintenance schedule. *Id*. at ¶ 87.

19             BART will solicit and consider comments from Class Counsel regarding any planned

20   material changes to any aspect of a station's path of travel, to ensure that such changes do not

21   inadvertently create access barriers for people with disabilities. *Id*. at ¶ 89.  BART will make

22   Reasonable Best Efforts to install Clipper pods and/or BART fare gates where elevators are

23   located outside of the paid area in order to bring them inside of the paid area. *Id*. at ¶ 90.  Where

24   the platform elevator is located outside of the paid area, BART will install signage stating that

25   passengers should make use of the service gate and describing the path to the platform and street

26   elevators. *Id*. at ¶ 91.  BART will work with staff and/or appropriate consultants, as needed, in

27   implementing these improvements. *Id*. at ¶ 92.

28

1    BART will maintain accessible fare gates in working condition in accordance with the

2    OEM maintenance schedule. *Id*. at ¶ 94. If an accessible fare gate is out of order, BART will

3    make Reasonable Best Efforts to ensure the station agent is readily available to assist riders with

4    Mobility Disabilities in the tagging and processing of tickets. *Id*. at ¶ 95.

5    BART will ensure that Station Agents do not lock or turn off elevators during BART's

6    operating hours, unless doing so is necessary to perform elevator maintenance or for some

7    legitimate safety-related reason. *Id*. at ¶ 97. BART will ensure that swing gates adjacent to

8    Station Agents' booths shall not be locked during BART's operating hours, unless a Station

9    Agent is immediately adjacent to the gates and able to provide passenger assistance. *Id*. at ¶ 98.

10   BART will also install signage at each swing gate that includes a wheelchair access icon and

11   directs passengers to ask the Station Agent to unlock the gate as necessary. *Id*. BART will

12   include these policies in Station Agent trainings and training materials within 90 days after the

13   Effective Date. *Id*. at ¶ 99.

14          6.    Training of BART Personnel

15   BART will include 1) federal and state requirements regarding the accessibility of BART

16   stations and service, and 2) disability etiquette, in training both existing and new BART

17   employees involved in ensuring the accessibility of BART stations. *Id*. at ¶ 101. BART will

18   continue to supervise and review the performance of all staff coming into direct contact with

19   customers to ensure people with disabilities receive proper service. *Id*. at ¶ 102. BART will also

20   employ available disciplinary procedures to ensure accountability of such employees, and each

21   instance of the use of disciplinary procedures related to employee infractions of BART's

22   accessibility policies will be recorded. *Id*.

23   The Settlement Agreement includes training requirements specific to BART Station

24   Agents, Train Operators, System Service Workers, and Operation Control Center Workers. *Id*. at

25   ¶¶ 103-106.

26          7.    Complaint Procedure

27   BART will implement and staff a phone line through which patrons can report

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   accessibility problems or speak to a staff person who has training on accessibility within the

2   BART system.  *Id.* at ¶ 107.  BART will update its website in relevant places to direct patrons

3   with accessibility concerns to the phone line and an online complaint form.  *Id.*

4       **C.    Monitoring**

5       BART will designate a "Point Person" to serve as an administrative liaison to Class

6   Counsel for the purpose of compliance, reporting, and monitoring.  *Id.* at ¶ 108.  The Settlement

7   Agreement sets forth a schedule for BART to provide progress reports to Class Counsel at least

8   annually for the settlement term.  *Id.* at ¶¶ 109-110.

9       The Parties will also meet annually for the first five years of the settlement term and as

10  needed thereafter in order to discuss BART's implementation of the settlement and any disputes

11  related thereto.  *Id.* at ¶ 112.  BART will pay Class Counsel $12,500 per year for years 1-5 of the

12  settlement term, and $10,000 per year for the remainder of the settlement term.  Payment will be

13  made annually on the anniversary of the Effective Date.  *Id.* at ¶ 113.

14      **D.    Dispute Resolution Procedure**

15      The Parties request that Magistrate Judge Beeler retain jurisdiction to enforce the

16  Settlement Agreement and mediate disputes throughout the Term.  *Id.* at ¶ 8.  The Parties have

17  agreed to a four-stage procedure to resolve disputes concerning the interpretation,

18  implementation, monitoring, compliance, and modification of the Settlement Agreement.  *Id.* at ¶

19  122.  First, any Party notified of a dispute shall respond in writing and cure the alleged violation

20  or failure to perform.  *Id.* at ¶ 123.  Second, if the alleging Party maintains that the violation or

21  failure to perform has not been cured, the Parties shall meet and confer in order to attempt to

22  resolve the dispute informally.  *Id.* at ¶ 124.  Third, if no resolution is reached, or if the Parties do

23  not timely meet and confer, any Party may submit the dispute for mediation by Judge Beeler or

24  another selected mediator.  *Id.* at ¶ 125.  Fourth, failing resolution through the above procedures,

25  any Party may submit the dispute to Judge Beeler for decision.  *Id.* at ¶ 126.

26      **E.    Service Awards to the Named Plaintiffs**

27      For services rendered on behalf of the settlement class, and subject to approval by the

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Court, BART will pay $7,500.00 each to the named individual Plaintiffs Pi Ra and Ian Smith and

2    $15,000.00 each to the organizational Plaintiffs, Senior and Disability Action and Independent

3    Living Resource Center of San Francisco. *Id*. at ¶ 129.  These service awards will not come out

4    of any monies allocated for disability access improvements but will instead be paid separately by

5    BART.  Each of the named Plaintiffs, and their representatives, participated in the investigation

6    of this case and participated in the negotiations that resulted in the proposed settlement.  Kim PA

7    Decl., Ex. 1 at ¶¶ 10, 16, 18.

8         **F.    Released and Unreleased Claims**

9         The Settlement Class will release BART from all claims for injunctive relief that were or

10   could have been brought in this Action, including claims that may accrue during the Term of the

11   Settlement Agreement.  Kim PA Decl., Ex. 1 at ¶ 114.  The release is binding upon the

12   Settlement Class through the Term of the Settlement Agreement, and any claims that accrue after

13   the expiration of the Term are not subject to this release.  *Id.* at ¶¶ 115-116.  The release does not

14   apply to claims for damages.  *Id*. at ¶ 118.

15        **G.    Reasonable Attorneys' Fees, Costs and Expenses**

16        The Parties attended a separate settlement conference in an effort to reach agreement as

17   to the amount of attorney's fees, costs and expenses to be paid by Defendants as part of the

18   settlement.  Kim PA Decl., Ex. 1 at ¶ 21.  This settlement conference took place in May 2023

19   after all injunctive relief terms and an agreement on service payments was resolved.  *Id.* at ¶ 14.

20   The proposed settlement provides that BART will pay Plaintiffs' Counsel $825,000 for

21   attorneys' fees and costs through final approval.  Kim PA Decl., Ex. 1 at ¶ 128.  This amount is a

22   significant reduction of Class Counsel's lodestar.  *See* Kim PA Decl., Ex. 1 at ¶¶ 20-21.  Like the

23   named Plaintiffs' service awards, Plaintiffs' Counsel's attorneys' fees, expenses and costs will

24   not be paid from any monies allocated for disability access improvements, but will instead be

25   paid separately by BART.  Subject to approval by the Court, BART will pay Plaintiffs'

26   Counsel's fees and costs (as agreed between the Parties) within 90 calendar days after the

27   Effective Date.  *Id*. at ¶ 128.  Plaintiffs' Motion for Attorney Fees and supporting Declarations of

28

1    Jinny Kim and Christopher Ho provide a discussion of Plaintiffs' Counsel's lodestar, the work

2    performed in this matter, the rates sought, and the costs and expenses incurred, all of which

3    Plaintiffs allege were reasonable and consistent with applicable legal standards.  *See* Dkt. No.

4    152 (Motion for Attorneys' Fees); Dkt. No. 152-1 (Declaration of Jinny Kim in Support of

5    Motion for Attorneys' Fees); Dkt. No. 152-2 (Declaration of Christopher Ho in Support of

6    Motion for Attorneys' Fees).  Plaintiffs have received no objections regarding the proposed

7    attorneys' fees, costs, and expenses.  Kim FA Decl. ¶ 12; Alvarenga Scalia Decl. ¶ 12.

8    **IV.    LEGAL ARGUMENT**

9         **A.    <u>The Court Has Conditionally Certified the Settlement Class.</u>**

10                     1.    <u>The Proposed Settlement Class Satisfies the Requirements of Rule 23(a).</u>

11         The Parties have stipulated to seek certification of the following class, for the purposes of

12    settlement only, pending final approval:

13         [A]ll people with Mobility Disabilities who, at any time between April 5,

14         2014 and the end of this Settlement's Term, have needed to use or will

15         need to use the Accessible Features of BART's facilities.

16    This Settlement Class is slightly different from the class described in Plaintiffs' Complaint,[4] but

17    given the nature of the claims and the injunctive relief at issue, this difference is without effect.

18    As a practical matter, the Settlement Class does not expand the class membership or legal claims

19    set forth in the Complaint but rather clarifies the class definition.  As a Rule 23(b)(2) class, no

20    class member may opt out of any provisions of the settlement.  *See* Kim PA Decl., Ex. 1 at ¶ 13.

21    The Court determined at preliminary approval that the Settlement Class meets the requirements

22    of Rules 23(a) and 23(b)(2).  Dkt. No. 149 at 3-6.  The Parties respectfully request that the Court

23    confirm this finding and certify the class.

24

25

---

26    [4] The class proposed in Plaintiffs' Complaint was "all persons with mobility disabilities who
     have been and/or are being denied the right to full and equal access to and use and enjoyment of

27    the BART fixed route system due to the access violations described herein. This includes
     individuals who use, have used, or who have attempted to use the BART fixed route system, as

28    well as those who have been and/or being deterred from such use as a result of the violations
     alleged herein."  *See* Complaint, Dkt No. 1 at 19:20-25.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

### a. The Settlement Class is Sufficiently Numerous.

Numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members...." *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 370 (N.D. Cal. 2021) (quoting *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000)). A court may make common sense extrapolations from statistical data to support a finding that the class is sufficiently numerous that joinder would be impracticable. *Californians for Disability Rights, Inc. v. California Dep't. of Transp.*, 249 F.R.D. 334, 347 (N.D. Cal. 2008).

The settlement class here satisfies this requirement. According to the United States Census Bureau's 2021 American Community Survey, roughly 7% of the United States population reports having a mobility disability that makes walking or climbing stairs either seriously difficult or impossible. Applying this prevalence rate to population numbers from the 2020 Census suggests that well over three hundred thousand class members reside within the three counties—Alameda, San Francisco, and Contra Costa—that the BART system serves. In addition, close to 1.5 million people with mobility disabilities visit the Bay Area each year for work and leisure, and many of these travelers either use the BART system, or would do so were they not deterred by its pervasive barriers to access. Thus, the class is sufficiently numerous.

### b. The Settlement Class Satisfies Commonality.

The "commonality" requirement of Rule 23(a)(2) is satisfied if the claims of Plaintiffs and the proposed class "'depend upon a common contention' that is . . . capable of classwide resolution" —meaning that "a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Commonality is generally satisfied where the lawsuit challenges system-wide practice or policy that affects all of the putative class members." *Benitez v. W. Milling, LLC*, No. 1:18-cv-01484-SKO, 2020 WL 309200, at *5 (E.D. Cal. Jan. 21, 2020) (internal quotation marks and citations omitted).

The commonality requirement is satisfied here because named Plaintiffs (or the persons

they serve) and class members are all subject to the same system-wide policies and practices that they are challenging. Plaintiffs allege Defendants failed to maintain a transit system readily accessible to persons with mobility disabilities. *See* Complaint, Dkt No. 1 at ¶¶ 30, 109, 114-15, 137, 145. Thus, the same factual allegations form the basis of each class member's claims and the legality of these policies and practices under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Unruh Act, and the California Government Code is a question capable of class-wide resolution. *See Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *9 (E.D. Cal. Apr. 27, 2020) (finding commonality because allegations that the employer's systematic wage-keeping practices violated state wage-and-hour laws "form[ed] the basis of each [] plaintiff's claims"); *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 512 (N.D. Cal. 2011) (finding commonality where plaintiffs challenged "uniform policies and practices of failing to ensure" accessibility for people with disabilities). Additionally, because "the changes Plaintiffs seek are to Defendant's system-wide policies and practices," any injunctive and/or declaratory remedy would necessarily apply to the entire class. *See T.G. v. Kern County*, No. 1:18-cv-0257 JLT, 2019 WL 6529083, slip op. at *13 (E.D. Cal. Dec. 4, 2019). Accordingly, commonality is satisfied because there is a "common contention" binding class members' claims.

### c. Plaintiffs' Claims are Typical of the Settlement Class.

The third element of Rule 23(a) requires that the claims of the representative parties are typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). "The requirement of typicality is not primarily concerned with whether each person in a proposed class suffers the same type of damages; rather, it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted). Because typicality overlaps with

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

commonality, a finding of commonality usually supports a finding of typicality.  *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (commonality and typicality requirements "tend to merge").

Here, named plaintiffs (or the persons they serve) and all members of the class have suffered alleged injuries that are attributable to the same "course of conduct":  Defendants' system-wide policies and practices involving accessibility to its fixed route system for persons with mobility disabilities.  *See, e.g.,* Complaint, Dkt. No. 1 at ¶¶ 47-84.  These common injuries encompass the alleged denial of full and equal access to the BART system due to consistent access barriers.  Thus, typicality is established because the claims of each class member, named and unnamed, resulted from the same course of conduct.  *See Just Film*, 847 F.3d at 1118 ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

### d.    *Plaintiffs and their Counsel Will Fairly and Adequately Protect the Interests of the Class.*

In determining whether a class has been adequately represented by plaintiffs and counsel, courts examine whether 1) "named plaintiffs and their counsel have any conflicts of interest with other class members," and 2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class."  *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) (citation omitted); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); Fed. R. Civ. P. 23(a)(4), *overruled on other grounds by Wal-Mart*, 564 U.S. 338.

Plaintiffs have no known conflicts with the proposed class and their interests are aligned with those of the other class members.  Kim PA Decl. ¶ 19; Declaration of Betty Traynor in Support of Joint Motion for Final Approval of Class Action Settlement ("Traynor FA Decl.")) ¶ 8; Declaration of Lana Nieves in Support of Joint Motion for Final Approval of Class Action Settlement ("Nieves FA Decl.")) ¶ 7; Declaration of Pi Ra in Support of Joint Motion for Preliminary Approval of Class Action Settlement ("Ra FA Decl.")) ¶ 5; Declaration of Ian Smith in Support of Joint Motion for Final Approval of Class Action Settlement ("Smith FA Decl.")) ¶

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA  94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

7.[5] Plaintiffs (or the persons they serve) are directly affected by the policies and practices that they brought this case to change. Complaint, Dkt. No. 1 at ¶¶ 47-84; Traynor FA Decl. ¶¶ 5-7; Nieves FA Decl. ¶¶ 3-5; Ra FA Decl. ¶¶ 3-4, 6; Smith FA Decl. ¶¶ 2-5. They sought the same relief for themselves and the class: compelling Defendant to change its policies and practices to allow people with mobility disabilities to have full and equal use of the BART transit system. *See T.G.*, 2019 WL 6529083, slip op. at 14 (finding that Plaintiffs will "fairly and adequately represent the interests of the class" where plaintiffs sought the same declaratory and injunctive relief for themselves and the class: changes to policies and practices in Defendant's juvenile detention facilities). Plaintiffs' decision to seek only declaratory and injunctive relief also weighs in their favor. *See Am. Council of the Blind v. Astrue*, No. C 05-04696 WHA, 2008 WL 4279674, at *6 (N.D. Cal. Sept. 11, 2008) (holding that where plaintiffs do not seek monetary damages, "[t]he potential for any conflict or collusion is...minimal").

Plaintiffs Smith and Ra have also demonstrated a serious commitment to their roles as class representatives. Ra FA Decl. ¶¶ 7, 12-14; Smith FA Decl. ¶¶ 6-9. They have met with their attorneys, recorded their experiences with BART's services and facilities in detail as it relates to their claims, participated actively in settlement negotiations, and are willing to continue to prosecute this action if necessary. Kim PA Decl. ¶¶ 16-18; Traynor FA Decl. ¶¶ 10-15; Nieves FA Decl. ¶¶ 4, 6, 9-11; Ra FA Decl. ¶¶ 7-14; Smith FA Decl. ¶¶ 4-5, 8-9, 11. Similarly, representatives from organizational Plaintiffs Independent Living Resource Center San Francisco and Senior and Disabled Action have dedicated substantial time to gathering information from their members and constituents, and participated actively in settlement negotiations on their behalf. Kim PA Decl. ¶¶ 16-18; Traynor FA Decl. ¶¶ 10-11, 13-15; Nieves FA Decl. ¶¶ 4, 6, 9-11.

"Adequate representation of counsel is usually presumed in the absence of contrary evidence." *Californians for Disability Rights*, 249 F.R.D. at 349 (citation omitted); *see* William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 3:72 (6th ed. 2022). Adequacy also

---

[5] Each class representative submitted a declaration in support of the Joint Motion for Preliminary Approval. *See* Dkt. Nos. 145-3, 145-4, 145-5 and 145-6.

1  depends on counsel's qualifications.  *Sali*, 909 F.3d at 1007.  Disability Rights Advocates and

2  Legal Aid at Work have zealously advocated for the class throughout litigation and settlement

3  discussions.  Both organizations have served as class counsel in numerous disability rights cases,

4  many of which have resulted in settlements.  Kim PA Decl. ¶¶ 27-31; Declaration of Christoper

5  Ho in Support of Joint Motion for Preliminary Approval, Dkt. No. 145-2 at ¶ 9.  Based on their

6  collective years of experience litigating disability claims, the policy and practice changes and

7  other provisions contained in the Agreement will ensure that Plaintiffs and the class have full and

8  equal access to the BART transit system, making further litigation unnecessary.  Kim PA Decl.

9  ¶¶ 15, 32-34.  Thus, the Class Representatives and Class Counsel are adequate to represent the

10  class.

11              2.      The Proposed Settlement Class Satisfies Rule 23(b)(2).

12          A Rule 23(b)(2) class is appropriate if "the party opposing the class has acted or refused

13  to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

14  declaratory relief is appropriate responding to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

15  This provision applies when "a single injunction or declaratory judgment would provide relief to

16  each member of the class."  *Wal-Mart Stores*, 564 U.S. at 360.  The Rule 23(b)(2) requirement is

17  "unquestionably satisfied when members of a putative class seek uniform injunctive or

18  declaratory relief from policies or practices that are generally applicable to the class as a whole."

19  *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (certifying (b)(2) class of prisoners

20  challenging defendant's centralized policies and practices of "uniform and statewide application"

21  even where those practices "may not affect every member of the proposed class . . . in exactly

22  the same way"); Fed. R. Civ. P. 23(b)(2).

23          Certifying this class under Rule 23(b)(2) is appropriate because the injunctive and

24  declaratory relief provided for in the Settlement Agreement is responsive to each class member's

25  claims regarding the accessibility of the BART transit system.

26      **B.      The Court Should Grant Final Approval of the Parties' Agreement.**

27          Federal Rule of Civil Procedure 23(e) conditions the settlement of any class action on

28

*Senior and Disability Action, et al. v. Bay Area Rapid Transit, et al.*, Case No. 3:17-cv-01876-LB
**Joint Motion for Final Approval of Class Settlement**                                      *15*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  court approval, which is intended to ensure that the proposed settlement is "fair, adequate, and

2  free from collusion." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation and

3  internal quotation marks omitted); Fed. R. Civ. P. 23(e)(2).  In determining whether to approve a

4  class settlement, the court looks to four factors:  (1) whether the class was adequately

5  represented; (2) whether the proposed settlement was negotiated at arm's length; (3) whether the

6  relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and

7  appeal, the terms of any proposed award of attorneys' fees, and other factors; and (4) whether the

8  proposal treats class members equitably relative to one another, focusing on a "'substantive'

9  review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(D); *see also*

10  Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2).

11  　　　　　　　　1.　　Plaintiffs and Their Counsel Have Adequately Represented the Class.

12  　　　　　In determining whether a class has been adequately represented, courts consider the same

13  "adequacy of representation" questions that are relevant to class certification.  *Cottle*, 340 F.R.D.

14  at 376.  Therefore, for the reasons discussed in § IV(A)(1)(d) above, the Court should find that

15  Plaintiffs and their counsel will fairly and adequately protect the interests of the class.

16  　　　　　　　　2.　　The Parties' Agreement is the Product of Arms-Length Negotiations.

17  　　　　　Settlement approval is appropriate when an agreement is the product of "serious,

18  informed, non-collusive negotiations" conducted by experienced counsel over an "extended

19  period of time." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal.

20  2007); *see e.g., Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no

21  evidence to suggest that the settlement was negotiated in haste or in the absence of information

22  illuminating the value of plaintiffs' claims").  "The involvement of a neutral or court-affiliated

23  mediator or facilitator in [] negotiations may bear on whether [the negotiations] were conducted

24  in a manner that would protect and further the class interests."  Advisory Committee Notes to

25  2018 Amendments, Fed. R. Civ. P. 23(e)(2).

26  　　　　　The Parties' proposed agreement is the product of six years of negotiations, including

27  informal discovery consisting of almost 2,000 pages of documents and nine in-person or Zoom

28

1  settlement conferences before Magistrate Judge Laurel Beeler.  Dkt Nos. 41, 48, 54, 59, 99, 103,

2  115, 136, 140 (Minute Entries re Settlement Conferences); Kim PA Decl. ¶¶ 9-10.   The Parties

3  have had regular phone, email, and in-person communications to discuss settlement terms, and

4  have exchanged multiple drafts of the settlement agreement after getting input from client

5  constituents.  Kim. PA Decl. ¶¶ 10-11.  Furthermore, Plaintiffs' counsel refused to negotiate

6  attorneys' fees and costs until agreement was reached on the remainder of the settlement.  Kim

7  PA Decl. ¶ 14. As such, settlement has been reached after extensive, good-faith, informed

8  negotiations and the Court should find that this Rule 23(e)(2) factor weighs in favor of approval.

9          3.    The Agreement Will Provide Substantial Relief to Plaintiffs and the Class.

10          The third factor requires courts to consider whether "the relief provided for the class is

11  adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

12  effectiveness of any proposed method of distributing relief to the class, including the method of

13  processing class member claims, (iii) the terms of any proposed award of attorney's fees,

14  including any timing of payments; and (iv) any agreement required to be identified under Rule

15  23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  In determining whether the Settlement "falls within the

16  range of possible approval," the Court must focus on "substantive fairness and adequacy" and

17  "consider plaintiffs' expected recovery against the value of the settlement offer."  *See In re*

18  *Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1079–1080 (citations omitted).  "It is well-settled

19  law that a proposed settlement may be acceptable even though it amounts only to a fraction of

20  the potential recovery that might be available to class members at trial."  *Uschold v. NSMG*

21  *Shared Servs., LLC,* 333 F.R.D. 157, 170 (N.D. Cal. 2019) (internal quotation and alterations

22  omitted).

23          Here, the proposed settlement agreement provides that BART will undertake a program

24  of renovating the most at-risk elevators and escalators in its system and implement a regular

25  maintenance schedule to ensure that its existing facilities remain in good repair.  The Agreement

26  calls for BART to implement an emergency preparedness plan, improve outage communication

27  and mitigation, continue a popular elevator attendant program, prioritize mitigation of soiled

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    accessibility features, and provide for a complaint procedure regarding accessibility issues.

2    BART will also regularly report outage data to the public and Plaintiffs' Counsel.  The

3    Agreement provides for monitoring by Plaintiffs' Counsel and a dispute resolution procedure for

4    resolving any issues that arise during the settlement term.  In sum, the Agreement

5    comprehensively addresses measures to ensure that class members receive reliable access to

6    BART's transportation service, and allows for Plaintiffs' Counsel to monitor implementation of

7    the settlement and provide input from class members regarding ongoing issues.  These changes

8    will resolve the problems that led to the lawsuit.

9              a.      **The potential costs, risks, and delays associated with litigation,**
                       **trial and appeal weigh in favor of approval.**

10

11           In contrast, the risks, expense, and likely duration of protracted litigation in this case

12   would be significant in the absence of a settlement.  Plaintiffs would have to prevail on a

13   contested motion for class certification, have summary judgment granted in their favor, win a

14   fact-intensive case at trial, fight off any appeals, and even then may not achieve the extent of

15   injunctive relief that the current Agreement contains.  *See Curtis-Bauer v. Morgan Stanley &*

16   *Co., Inc*, No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement

17   avoids the complexity, delay, risk and expense of continuing with the litigation and will produce

18   a prompt, certain, and substantial recovery for the Plaintiff class.").  Negotiations have already

19   lasted six years, and litigation would likely take many more years and cost additional hundreds

20   of thousands of dollars in fees and costs, all while class members would have to wait to get relief

21   that is essential to their daily lives:  access to the BART system.  Kim PA Decl. ¶¶ 32-34.  The

22   threat of additional delays and costs is especially significant given delays already caused by the

23   coronavirus pandemic.

24           Even if Plaintiffs were able to obtain greater relief after a trial on the merits, the inherent

25   risks of litigation, and the protracted delays associated with trial and the inevitable appeals

26   thereafter, weigh heavily in favor of the relief guaranteed to the class members by the proposed

27   settlement on a much faster time frame.  *See Nat'l Rural Telecomm's Coop.*, 221 F.R.D. at 526

28   ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

preferable to lengthy and expensive litigation with uncertain results.'") (quoting *Newberg on Class Actions,* 11:50 at 155 (4th ed. 2002)).

**b.    The terms of the Parties' proposed attorneys' fee award also weigh in favor of approval.**

The statutes at issue in this case allow prevailing plaintiffs to recover their reasonable fees and costs. *See* 42 U.S.C. § 12205 (ADA); Cal. Civ. Code § 52(a) (Unruh); 29 U.S.C. § 794a(b) (Section 504 of the Rehabilitation Act); Cal. Gov't Code § 11139. "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement… courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The "degree of success obtained" is "the most critical factor" to assessing the reasonableness of an attorneys' fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). This principle is "particularly important in complex civil rights litigation involving numerous challenges to institutional practices...[because] this type of litigation is lengthy and demands many hours of lawyers' services." *Id.* A plaintiff is a prevailing party when they obtain a successful settlement. *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992). Here, Plaintiffs are entitled to recover their reasonably attorneys' fees and costs because they obtained a successful settlement.

Subject to this Court's approval, Defendants have agreed to pay Plaintiffs' Counsel $825,000 to cover their fees and costs through the Court's final approval of the settlement. Kim PA Decl. Ex. 1 at ¶ 128. This amount is based on a lodestar of $1,161,331. Kim PA Decl. ¶ 20. This amount was negotiated with the assistance of the Court after all the substantive injunctive relief terms had been resolved. Kim PA Decl. ¶¶ 14, 21. *See Manual for Complex Litigation* (Fourth) 21.7 at 335 (2004) (separate negotiation of the class settlement before an agreement on fees is generally preferable).

Plaintiffs have moved for reasonable attorneys' fees, costs, and expenses pursuant to F.R.C.P. 23(h), and have provided further detail regarding the requested award in the motion and supporting declarations and documentation. *See* Plaintiffs' Motion for Reasonable Attorneys'

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Fees, Costs, and Expenses, Dkt. No. 152.  The Parties have not received any objections to the

2    request for award of attorneys' fees, costs, and expenses.  Kim FA Decl. ¶ 12.

3        Accordingly, the Court should find that the terms of the Parties' fee award weigh in favor

4    of approval.

5                    4.        The Parties' Agreement Treats All Class Members Equitably

6        "The Court must next examine whether the Settlement Agreement provides preferential

7    treatment to any class member."  *Uschold*, 333 F.R.D. at 170 (internal quotation and citation

8    omitted).  Under the Parties' proposed settlement every class member, including Plaintiffs, will

9    benefit from exactly the same injunctive relief.  The only difference in recovery between the

10   Plaintiffs and other class members is a service award in the amount of $7,500 each for the

11   individual Plaintiffs and $15,000 each for the organizational plaintiffs.

12       **C.        The Proposed Service Awards are Reasonable.**

13       In class action litigation, "reasonable incentive payments" can be awarded to class

14   representatives for "for their substantiated litigation expenses, and identifiable services rendered

15   to the class directly under the supervision of class counsel."  *In re Apple Inc. Device*

16   *Performance Litig.*, 50 F.4th 769, 786 (9th Cir. 2022) (*citing Staton v. Boeing Co.*, 327 F.3d 938,

17   977 (9th Cir. 2003)).  District courts must evaluate proposed incentive awards individually, using

18   relevant factors that include "the actions the plaintiff has taken to protect the interests of the

19   class, the degree to which the class has benefitted from those actions, ... [and] the amount of time

20   and effort the plaintiff expended in pursuing the litigation."  *Staton*, 327 F.3d at 977.  "Such

21   awards are discretionary ... and are intended to compensate class representatives for work done

22   on behalf of the class, to make up for financial or reputational risk undertaken in bringing the

23   action, and, sometimes, to recognize their willingness to act as a private attorney

24   general."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation

25   omitted).

26       The service awards sought here are consistent with the service awards approved in this

27   District.  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266–68 (N.D. Cal. 2015)

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

(collecting cases and approving a service award of $10,000 "in light of the time and effort Plaintiff expended for the benefit of the class—at times, to his own personal detriment—and the risks associated with initiating the litigation and representing the class."); *see also, e.g., Bolton v. U.S. Nursing Corp.*, No. C 12-4466 LB, 2013 WL 5700403, at *6 (N.D. Cal. Oct. 18, 2013) (approving service award of $10,000 for an individual class representative, given the "collective outcome" of the case and considering that she "assisted throughout the litigation and was prepared to be deposed in support of the case."); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010) (approving $20,000 service award because the plaintiff's "commitment and contribution [] have been considerable."); *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 7863877, *1 (N.D. Cal. Oct. 22, 2008) (approving $25,000 service award because plaintiff took risks and for the effort she devoted to case); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 service award to each of four class representatives because of risk incurred by putting their names on complaint and informal discovery).

The factors courts use in determining whether to authorize a service award include:  (1) the amount of time and effort spent by the class representatives; (2) the degree to which the class representatives' efforts benefitted the class; (3) the personal difficulties encountered by the class representatives; (4) the duration of the litigation; (5) the personal benefit, or lack thereof, enjoyed by the class representatives as a result of the litigation; and (6) the risk to the class representative in commencing suit, both financial and otherwise.  *Staton*, 327 F.3d at 977.  When viewed in their entirely, these factors weight in favor of granting the Class Representatives the modest service awards requested in the settlement.

### 1.  The Class Representatives Devoted Significant Amounts of Time and Effort to this Settlement.

"An incentive award is appropriate where … the 'class representatives remained fully involved and expended considerable time and energy during the course of the litigation.'" *Schaffer v. Litton Loan Servicing, LP,* No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at

1   *19 (E.D. Cal. Nov. 13, 2012) (internal citation omitted).  Such involvement includes

2   participating in the preparation of pleadings filed on behalf of the class; remaining informed of

3   the status of the litigation; and participating in settlement decisions.  *Id.*

4           During the course of this lawsuit, all Class Representatives were in frequent

5   communication with Class Counsel regarding the status of the case.  They provided information

6   during lengthy interviews, assisted in preparing and evaluating the case for settlement, and

7   provided important feedback in the settlement process itself.  Traynor FA Decl. ¶¶ 8, 10-15;

8   Nieves FA Decl. ¶¶ 4, 6, 9-11; Ra FA Decl. ¶¶ 7-8, 10-14; Smith FA Decl. ¶¶ 4-5, 89, 11.  The

9   Class Representatives were prepared to litigate the case if necessary.  Traynor Decl. ¶ 9; Nieves

10  FA Decl. ¶ 8; Ra FA Decl. ¶ 8; Smith FA Decl. ¶ 8.  All the Class Representatives attended at

11  least one settlement conference.  Traynor FA Decl. ¶ 14; Nieves FA Decl. ¶ 10; Ra FA Decl. ¶¶

12  12-13; Smith FA Decl. ¶ 12.  For those settlement conferences that they could not attend, they

13  were available to Class Counsel.  Traynor FA Decl. ¶14; Nieves FA Decl. ¶ 6; Ra FA Decl. ¶ 13;

14  Smith FA Decl. ¶ 11.  They evaluated numerous drafts of the proposed settlement agreement.

15  Traynor FA Decl. ¶ 14; Nieves FA Decl. ¶11; Ra FA Decl. ¶ 14; Smith FA Decl. ¶ 13.

16          Once the Agreement was finalized, all Class Representatives and representatives from

17  SDA and ILRCSF reviewed it carefully and discussed it with Class Counsel.  Traynor FA Decl.

18  ¶¶ 14-15; Nieves FA Decl. ¶ 11; Ra FA Decl. ¶ 14; Smith FA Decl. ¶ 13.  Each Class

19  Representative lent their full support to the proposed class settlement.  Traynor FA Decl. ¶¶ 14,

20  18; Nieves FA Decl. ¶ 11; Ra FA Decl. ¶ 14; Smith FA Decl. ¶ 13.

21          Perseverance in reaching a settlement on behalf of the class over the course of six years

22  supports the approval of reasonable service awards.

23          2.    The Class Representatives' Efforts Resulted in Substantial Benefits to the
                  Class by Way of Settlement.

24          In addition to weighing the amount of time and effort expended by the class

25  representatives, courts also consider the degree to which the Class Representatives' efforts

26  benefitted the class.  *Staton,* 327 F.3d at 977 (internal citation omitted).  The Class

27  Representatives' contribution to this lawsuit will have an impact on the class of people with

28

*Senior and Disability Action, et al. v. Bay Area Rapid Transit, et al.*, Case No. 3:17-cv-01876-LB
**Joint Motion for Final Approval of Class Settlement**                                      *22*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   mobility disabilities who use and rely on BART's transportation services.  The Class

2   Representatives' personal encounters with access barriers – and in the case of Senior and

3   Disability Action and Independent Living Resource Center of San Francisco – its members and

4   constituents with mobility disabilities – have resulted in a carefully constructed settlement

5   agreement reached only after years of settlement negotiations.  The Class Representatives

6   actively participated throughout the case pushing forward until the Parties reached a settlement

7   agreement.  The service awards here are intended to compensate the named Plaintiffs for the

8   important role they played for the benefit of the class, and the time, effort and risks they

9   undertook to secure the result obtained on behalf of the class.  In agreeing to serve as class

10  representatives, they accepted the responsibility of representing the interests of all class

11  members.  Traynor FA Decl. ¶ 8; Nieves FA Decl. ¶ 7; Ra FA Decl. ¶ 5; Smith FA Decl. ¶ 7.

12              3.    <u>Notoriety Experienced by the Class Representatives.</u>

13          Another factor that supports the awarding of service awards is whether the class

14  representatives' service resulted in notoriety or other personal difficulties.  *See, e.g., Schaffer*,

15  2012 WL 10274679, at *18.  Here, the Class Representatives faced notoriety because of the

16  media attention.  *See, e.g., Wilson v. Airborne, Inc.*, No. EDCV 07-770-VAP (OPx), 2008 WL

17  3854963, at *13 (C.D. Cal. Aug. 13, 2008) (class representative's exposure to media attention

18  weighed in favor of a service payment).  Each of the Class Representatives were named in news

19  articles published about the lawsuit.  In addition, both Mr. Ra and Mr. Smith were interviewed

20  and quoted in an article published on SFGate.  Ra FA Decl. ¶ 9, Smith FA Decl. ¶ 10.  The risk

21  of notoriety encountered by the Class Representatives due to their involvement on behalf of the

22  class support Plaintiffs' request to grant the proposed service awards.

23              4.    <u>The Duration of the Lawsuit.</u>

24          Perseverance in pursuing litigation on behalf of the class over the course of several years

25  supports the approval of reasonable service awards.  Here, all Class Representatives vigorously

26  represented the interests of the class for over six years and were prepared to persevere through

27  litigation.  This factor weighs in favor of the requested service awards.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

5.    The Class Representatives Faced Risk in Commencing Suit.

Here, class representatives SDA, ILRCSF, Ra and Smith lent their names to this case and subjected themselves to public attention.  "When a class representative shoulders some degree of personal risk in joining the litigation, such as workplace retaliation or financial liability, an incentive award is especially important."  *In re Toys R Us*, 295 F.R.D. 438, 470 (C.D. Cal. 2014).  The existence of such risk is not necessary for courts to approve service awards, but only one of several factors to be considered.  *Id.* at 470–72 (approving service award to each plaintiff despite finding no risk to class representatives).  The Class Representatives had some level of financial risk if Plaintiffs were not successful in the litigation.  *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("Class Representatives undertook the financial risk that, in the event of a judgment in favor of Defendant in this action, they could have been personally responsible for any costs awarded in favor of Defendant.").

Plaintiffs SDA, ILRCSF, Ra and Smith decided to serve as class representatives because they wanted BART to provide meaningful access to people with mobility disabilities.  They demonstrated significant courage in publicly challenging BART's policies and practices, providing invaluable assistance to Class Counsel during the pendency of this action, and vigorously representing the interests of the class.  This factor weighs in favor of the proposed service awards.

6.    The Class Representatives Have Acted in the Best Interests of the Class.

The possibility of receiving service awards has not created a conflict between the Class Representatives and the class.  Plaintiffs SDA, ILRCSF, Ra and Smith have always understood that as Class Representatives they are obligated to act in the best interests of the class.  Traynor FA Decl. ¶ 8; Nieves FA Decl. ¶ 7; Ra FA Decl. ¶ 5; Smith FA Decl. ¶ 7.

Moreover, when they accepted the proposed settlement on behalf of the class, the Plaintiffs were fully aware that this Court may reduce their requested service awards or deny them altogether.  Traynor FA Decl. ¶ 16; Nieves FA Decl. ¶ 12; Ra FA Decl. ¶ 15; Smith FA Decl. ¶ 15.  Their support for the proposed settlement in no way was conditioned upon the

1   promise of a service award.

2          7.   The Proposed Service Awards Promote the Public Policies Underlying the
               Statutory Schemes Upon Which Plaintiffs' Claims are Based.
3

4          Approving the proposed service awards will promote important public policies

5   underlying Plaintiffs' civil rights claims.  By challenging BART's inaccessibility, Plaintiffs have

6   advanced the public policies behind the ADA and Section 504.  Congress enacted the ADA and

7   Section 504 to enable persons with disabilities to live full and independent lives to the maximum

8   extent possible.  29 U.S.C. § 794; 42 U.S.C. § 12101(a)(7).  Here, the Class Representatives have

9   vindicated the civil rights purposes of the ADA, Section 504 and California law by ensuring that

10  transportation systems are accessible to people with disabilities.

11         The service award amounts proposed here—$7,500 for the individual class

12  representatives and $15,000 for the organizational Class Representatives—are in line with what

13  has been approved in similar cases where similar commitments of time and effort were required,

14  and weigh in favor of the fairness of the settlement and final approval.

15  **V.    CONCLUSION**

16         The settlement of this litigation achieves important benefits for Plaintiffs and all members

17  of the proposed Settlement Class.  The Parties respectfully request that the Court enter the

18  proposed order granting final approval for the Agreement, certifying the settlement class, and

19  retaining jurisdiction over implementation of the settlement.

20  DATED:  April 4, 2024                Respectfully Submitted,

21                                        DISABILITY RIGHTS ADVOCATES

22                                          /s/ Jinny Kim
                                          Jinny Kim
23                                        Melissa Riess
                                          Attorneys for Plaintiffs
24
                                          GLYNN, FINLEY, MORTL, HANLON &
25                                        FRIEDENBERG, LLP

26
                                            /s/ Jonathan Eldredge
27                                        Jonathan Eldredge
                                          Attorneys for Defendants
28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644